[Nos. 61482-2; 61603-5.   En Banc.   June 22, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v.
FREDERICK LESLIE GOCKEN, *Petitioner*.

THE STATE OF WASHINGTON, *Respondent*, v. MISTIE B.
CRISLER, *Petitioner*.

*Joseph Cooney Legal Services, Leslie Loukkola,* and *Frank A. Malone,* for petitioner Gocken.

*Eric M. Christianson,* for petitioner Crisler.

*James R. Sweetser, Prosecuting Attorney for Spokane County,* and *Kevin M. Korsmo, Deputy; Steven M. Clem, Prosecuting Attorney for Douglas County,* and *Frank W. Jenny, Deputy,* for respondent.

*Katherine S. Knox* on behalf of Washington Defender Association, amicus curiae for petitioners.

GUY, J. — The question before the court is whether the double jeopardy clause of the Washington State Constitution, article I, section 9, extends broader individual rights to a criminal defendant than the double jeopardy clause of the United States Constitution, amendment V. We hold it does not.

## BACKGROUND

### State v. Gocken

On October 28, 1990, at approximately 2 a.m., Mr. Frederick L. Gocken placed a license plate on a vehicle parked at the Shamrock Car Wash in the city of Spokane. He also handed what appeared to be cash to an unidentified person. Several people observed this transaction and reported their observations to the Spokane Police Department. Mr. Gocken left the car wash, stopping a short distance away when the vehicle he was driving overheated. Mr. Gocken was at the rear of the vehicle when several police officers contacted him regarding the citizens' reports.

The police officers asked Mr. Gocken for his identification and vehicle registration. Mr. Gocken informed the police officers that his identification and a gun were inside the vehicle. The police officers asked Mr. Gocken if they could enter the vehicle and retrieve his identification. Mr. Gocken denied this request.

A police officer standing next to the vehicle observed

through the driver's side window a marijuana pipe on the driver's side floorboard. Mr. Gocken was arrested for possession of drug paraphernalia in violation of RCW 69.50.412(1).[1] The police officers searched the vehicle incident to the arrest and recovered a handgun, a Tupperware container containing marijuana, a plastic bag containing marijuana, a marijuana grow operation ledger, and cash totaling $1,355. Mr. Gocken was then arrested on a second charge—possession of a controlled substance with intent to deliver in violation of RCW 69.50.401(a).[2]

Mr. Gocken pleaded guilty in district court to the misdemeanor charge of possession of drug paraphernalia. Mr. Gocken then filed in Spokane County Superior Court a motion to dismiss the felony possession charge, claiming double jeopardy barred its prosecution. The Superior Court agreed with Mr. Gocken and dismissed the felony possession charge. The Court of Appeals reversed. *State v. Gocken*, 72 Wn. App. 908, 910, 866 P.2d 694 (1994). We granted Mr. Gocken's petition for review.

### State v. Crisler

On December 9, 1991, Ms. Mistie B. Crisler and another woman entered a Lamonts store in the city of East Wenatchee. After some discussion, each woman grabbed an armload of clothing and ran out of the store. Lamonts personnel pursued. Upon chase, both women dropped the merchandise they were carrying. The clothing was eventually collected and counted. The combined value of the stolen merchandise exceeded $250.

Ms. Crisler was charged by the City of East Wenatchee

---

[1] RCW 69.50.412(1) states in relevant part:

"It is unlawful for any person to use drug paraphernalia to . . . inject, ingest, inhale, or otherwise introduce into the human body a controlled substance".

[2] RCW 69.50.401(a) states in relevant part:

". . . [I]t is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance".

with criminal conspiracy in violation of RCW 9A.28.040(1).[3] On December 10, 1991, Ms. Crisler pleaded guilty in district court to the misdemeanor charge of criminal conspiracy. The court accepted her plea and entered a finding of guilt. Ms. Crisler was not represented by counsel.

On December 11, 1991, one day after her plea of guilty to criminal conspiracy, Ms. Crisler was charged by the County of Douglas with second-degree theft, a felony, in violation of former RCW 9A.56.040.[4] The criminal conspiracy charge and the theft charge arose from the same incident at Lamonts. The East Wenatchee prosecutor continued sentencing on the conspiracy conviction until the theft charge was resolved.

Ms. Crisler secured legal counsel and proceeded to trial. At trial, the Superior Court gave an accomplice instruction, WPIC 10.51, based on the testimony that either Ms. Crisler or the other woman was heard to say, "Let's go", immediately prior to fleeing the store. On March 11, 1992, a jury found Ms. Crisler guilty of second-degree theft.

On March 23, 1992, Ms. Crisler moved to dismiss the theft conviction, claiming double jeopardy barred its prosecution. The Superior Court denied the motion.

On April 1, 1992, Ms. Crisler was sentenced for her theft conviction. She received a 15-day jail sentence with credit given for 15 days already served. On April 15, 1992, the East Wenatchee Prosecuting Attorney dismissed the conspiracy conviction.

Ms. Crisler appealed the Superior Court's ruling denying her claim of double jeopardy to the Court of Appeals. The Court of Appeals affirmed. *State v. Crisler*, 73 Wn.

---

[3]RCW 9A.28.040(1) states:

"A person is guilty of criminal conspiracy when, with intent that conduct constituting a crime be performed, he [or she] agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them takes a substantial step in pursuance of such agreement".

[4]Former RCW 9A.56.040(1) states in relevant part:

"A person is guilty of theft in the second degree if he [or she] commits theft of: "(a) Property or services which exceed(s) two hundred and fifty dollars in value, but does not exceed one thousand five hundred dollars in value; . . .".

App. 219, 224, 868 P.2d 204 (1994). We granted Ms. Crisler's petition for review and consolidated her case with Mr. Gocken's pursuant to RAP 3.3(b).

ISSUE

We accepted review to determine whether the double jeopardy clause of the Washington State Constitution, article I, section 9, extends broader individual rights to a criminal defendant than the double jeopardy clause of the United States Constitution, amendment V.

ANALYSIS

I

The double jeopardy clause of the United States Constitution guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb". U.S. Const. amend. V. The double jeopardy clause of the Washington State Constitution guarantees that "No person shall . . . be twice put in jeopardy for the same offense". Const. art. I, § 9. The Fifth Amendment applies to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 23 L. Ed. 2d 707, 89 S. Ct. 2056 (1969).

The double jeopardy clause of the Fifth Amendment has been construed to encompass three separate constitutional protections:

> It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

(Footnotes omitted.) *North Carolina v. Pearce*, 395 U.S. 711, 717, 726, 23 L. Ed. 2d 656, 89 S. Ct. 2072, 2089 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 104 L. Ed. 2d 865, 109 S. Ct. 2201 (1989).

The <em>Blockburger</em> Test

In both the multiple punishment and successive

prosecution contexts, the Supreme Court has ruled double jeopardy applies if the two offenses for which the defendant is punished or tried cannot survive the "same elements" test. *United States v. Dixon*, 509 U.S. 688, 125 L. Ed. 2d 556, 568, 113 S. Ct. 2849 (1993).

The "same elements" test, commonly referred to as the *Blockburger* test, examines whether each offense contains an element not contained in the other.

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is *whether each provision requires proof of a fact which the other does not.*

(Italics ours.) *Blockburger v. United States*, 284 U.S. 299, 304, 76 L. Ed. 306, 52 S. Ct. 180 (1932); *Dixon*, 125 L. Ed. 2d at 568.

The *Blockburger* test was the standard for federal double jeopardy analysis for almost 60 years, until the Supreme Court decided *Grady v. Corbin*, 495 U.S. 508, 109 L. Ed. 2d 548, 110 S. Ct. 2084 (1990). In *Grady*, the Supreme Court ruled a subsequent prosecution must satisfy a two-part test that included the *Blockburger* test and a "same conduct" test to avoid double jeopardy. The *Grady* Court outlined the second part of the "same conduct" test when it wrote:

> [T]he Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, *will prove conduct that constitutes an offense for which the defendant has already been prosecuted.*

(Italics ours.) *Grady*, 495 U.S. at 521. The "same conduct" test announced in *Grady* was overruled three years later in *Dixon*.

> We have concluded, however, that Grady must be overruled. Unlike Blockburger analysis, whose definition of what prevents two crimes from being the "same offence," US Const, Amdt 5, has deep historical roots and has been accepted in

numerous precedents of this Court, Grady lacks constitutional roots. The "same-conduct" rule it announced is wholly inconsistent with earlier Supreme Court precedent and with the clear common-law understanding of double jeopardy.

*Dixon*, 125 L. Ed. 2d at 573. The Blockburger test is now the exclusive standard for reviewing whether successive prosecutions violate the double jeopardy clause of the Fifth Amendment.

## *Gunwall* Analysis

Petitioner Gocken contends the double jeopardy clause of Const. art. I, § 9 provides broader constitutional protection to a criminal defendant than the double jeopardy clause of the Fifth Amendment. Mr. Gocken requests we adopt and apply the Grady "same conduct" test, not the Blockburger test, when reviewing questions of successive prosecutions under Const. art. I, § 9. Whether the Washington State Constitution provides broader constitutional protection than the United States Constitution is determined by reference to the six nonexclusive factors enumerated in *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986). Mr. Gocken properly raised and briefed the six *Gunwall* factors. *See State v. Wethered*, 110 Wn.2d 466, 472-73, 755 P.2d 797 (1988).[5]

The first and second *Gunwall* factors require this court to evaluate the textual language of the state constitution and any significant differences in the texts of parallel provisions of the federal and state constitutions.

Washington courts have consistently held the double jeopardy clause of the Fifth Amendment and the double jeopardy clause in Const. art. I, § 9 are virtually identical. *State v. Schoel*, 54 Wn.2d 388, 391, 341 P.2d 481 (1959) (the federal and state double jeopardy clauses are identi-

---

[5]Petitioner Crisler attempted to raise the six *Gunwall* factors in a supplemental brief submitted to this court on October 12, 1994. The brief was rejected as untimely pursuant to RAP 13.7(d). Because the issue is properly before the court in the companion case, the *Gunwall* analysis pertains to both cases.

cal in thought, substance and purpose); *State v. Larkin*, 70 Wn. App. 349, 352-53, 853 P.2d 451 (1993). Washington courts have also consistently held the same interpretation is given to Const. art. I, § 9 as is afforded to the Fifth Amendment by the United States Supreme Court. *State v. Ridgley*, 70 Wn.2d 555, 556, 424 P.2d 632 (1967) (Const. art. I, § 9 has been construed to provide protection identical to that provided under the federal constitution); *Larkin*, 70 Wn. App. at 352-53; *State v. Kirk*, 64 Wn. App. 788, 790-91, 828 P.2d 1128, *review denied*, 119 Wn.2d 1025 (1992).

The third *Gunwall* factor requires this court to examine the constitutional and common-law history of Const. art. I, § 9.

Mr. Gocken argues Const. art. I, § 9 was based on the Constitution of Oregon and not on the Constitution of the United States.[6] Petition for Review, at 12 (citing *Journal of the Washington State Constitutional Convention*, 1889, at 498 n.16 (Beverly P. Rosenow ed. 1962)). Mr. Gocken asserts an analysis of Const. art. I, § 9 independent of the Fifth Amendment is therefore mandated. We disagree. In *State v. Brunn*, 22 Wn.2d 120, 154 P.2d 826, 157 A.L.R. 1049 (1945) this court expressed its opinion as to the origin of Const. art. I, § 9.

> Candidly speaking, it is most unlikely that those who drafted our constitution, and the people who adopted it, greatly concerned themselves with the constitutional provision under discussion, or had any clear or fixed idea of its technical meaning. It is more likely that the provision was inserted in Article 1, entitled "Bill of Rights," [sic] because it was in the Federal bill of rights and had been included in the constitutions of practically all of the states that had theretofore entered the Union.

*Brunn*, 22 Wn.2d at 139. In addition, Mr. Gocken's argument that Const. art. I, § 9 was drafted in accordance with

---

[6]Const. art. I, § 9 is not identical to the Oregon double jeopardy clause, which provides in relevant part: "No person shall be put in jeopardy twice for the same offence". Or. Const. art. I, § 12.

the Oregon Constitution and not in accordance with the United States Constitution overlooks a portion of footnote 16 from the *Journal* that indicates both the Oregon Constitution and the United States Constitution were considered before Const. art. I, § 9 was adopted. *Journal*, at 498 n.16.

Mr. Gocken also argues *In re Nielsen*, 131 U.S. 176, 33 L. Ed. 118, 9 S. Ct. 672 (1889), published only a few months before the adoption of the Washington State Constitution, sets forth a double jeopardy analysis similar to that of the *Grady* "same conduct" test. The Supreme Court in *United States v. Dixon, supra,* reviewed *In re Nielsen* and held the 1889 decision is in accord with the *Blockburger* test, not the *Grady* "same conduct" test. *Dixon*, 125 L. Ed. 2d at 573-74.

The fourth *Gunwall* factor requires this court to examine preexisting state law. An early judicial interpretation of Const. art. I, § 9 occurred in 1896, seven years after the Washington State Constitution was adopted. *State v. Reiff*, 14 Wash. 664, 45 P. 318 (1896). In *Reiff,* this court ruled a successive prosecution for false pretenses under section 234 of the Penal Code was not barred by the double jeopardy provision of Const. art. I, § 9 after defendant's motion to dismiss a larceny charge under section 53 of the Penal Code was granted.

> A mere reference to §§ 53 and 234, *supra*, is sufficient to show the difference between the character of the offenses there defined. *There are elements requisite to each which are not necessary to the other*, and proof of the offense charged in either of the informations would not be sufficient to sustain a conviction under the other.

(Italics ours.) *Reiff*, 14 Wash. at 667. The double jeopardy test articulated in *Reiff,* sometimes denominated as the "same evidence" test, is basically identical to the *Blockburger* test. *State v. Calle*, 125 Wn.2d 769, 777, 888 P.2d 155 (1995); *State v. Laviollette*, 118 Wn.2d 670, 675, 826 P.2d 684 (1992); *State v. Roybal*, 82 Wn.2d 577, 581-82, 512 P.2d 718 (1973). This test has been applied by Washington

courts for nearly 100 years. *See Roybal*, 82 Wn.2d at 581. Moreover, the decision in *Reiff*, an early interpretation of Const. art. I, § 9, confirms that Const. art. I, § 9 does not provide broader individual rights to criminal defendants than the Fifth Amendment.

The fifth *Gunwall* factor requires this court to examine any differences in structure between the federal and state constitutions. In *State v. Young*, 123 Wn.2d 173, 867 P.2d 593 (1994), this court held the fifth *Gunwall* factor will always point toward pursuing an independent state constitutional analysis because the federal constitution is a grant of power from the states, while the state constitution represents a limitation of the State's power. *Young*, 123 Wn.2d at 180.

The sixth *Gunwall* factor requires this court to examine matters of particular state interest or local concern.

The definition of "same offense" in Const. art. I, § 9 affects prosecutions for offenses committed in this state. The need to protect the double jeopardy rights of Washington citizens is correctly a state concern. Mr. Gocken argues the need to have a consistent, understandable, and fair approach to double jeopardy warrants a separate state analysis. As support, Mr. Gocken cites the five-to-four decision in *Grady v. Corbin*, 495 U.S. 508, 109 L. Ed. 2d 548, 110 S. Ct. 2084 (1990), and the five-to-four decision in United States v. Dixon, 509 U.S. 688, 125 L. Ed. 2d 556, 113 S. Ct. 2849 (1993).

In *Dixon*, Justice Scalia wrote for the majority of the Supreme Court and concluded the *Blockburger* analysis adequately protects the interests embodied in the double jeopardy clause of the Fifth Amendment. Justice Scalia attacked the *Grady* "same conduct" test as a source of confusion and instability in lower courts. *Dixon*, 125 L. Ed. 2d at 577; see Kathryn A. Pamenter, Comment, United States v. Dixon: *The Supreme Court Returns to the Traditional Standard for Double Jeopardy Clause Analysis*, 69 Notre Dame L. Rev. 575, 582 (1994). The difficulty with *Grady* became apparent in *United States v. Felix*,

503 U.S. 378, 118 L. Ed. 2d 25, 112 S. Ct. 1377 (1992). In *Felix*, the Supreme Court created an exception to the *Grady* rule by allowing a subsequent prosecution for conspiracy, despite an earlier charge for the underlying offense. Peter A. Raith, Comment, *Criminal Law: Double Trouble or Double Jeopardy—"Same Conduct"* (Grady) *Test Overruled in Favor of Return to Single "Same Element"* (Blockburger) *Test*, 33 Washburn L.J. 429, 447 (1994). Justice Scalia argued further the *Blockburger* test is a source of precedent, while the *Grady* "same conduct" test is inconsistent with previous court decisions, historically inaccurate, poorly reasoned, and confusing in practice. *Dixon*, 125 L. Ed. 2d at 573, 577-78. Four Justices in *Dixon* disagreed, concluding the *Blockburger* test does not adequately protect individuals from double jeopardy.

Amicus curiae Washington Defender Association underscores that Washington would not be alone in rejecting the *Blockburger* test as advanced in *Dixon*. The Supreme Court of Hawaii rejected *Dixon* and adopted the *Grady* "same conduct" test for double jeopardy analysis under the Hawaii Constitution. *State v. Lessary*, 75 Haw. 446, 865 P.2d 150 (1994). *But see State v. Kurzawa*, 180 Wis. 2d 502, 521-22, 509 N.W.2d 712, *cert. denied*, 129 L. Ed. 2d 839 (1994) (the *Blockburger* test, rather than the *Grady* "same conduct" test, is applied when Wisconsin courts determine whether successive prosecutions are barred by the double jeopardy clause under the Wisconsin Constitution).

Washington case law establishes the *Blockburger* test adequately protects the citizens of this state from double jeopardy. *See, e.g., State v. Hennings*, 100 Wn.2d 379, 383, 670 P.2d 256 (1983) (double jeopardy clause protects against a second prosecution after acquittal); *State v. Johnson*, 48 Wn. App. 531, 535, 740 P.2d 337, *review denied*, 109 Wn.2d 1011 (1987) (convictions for two robberies in connection with robbing two clerks in one store violated double jeopardy); *State v. Kirk*, 64 Wn. App. 788, 792, 828 P.2d 1128 (finding of guilt on a lesser included of-

fense is an acquittal on the greater offense), *review denied*, 119 Wn.2d 1025 (1992); *State v. Potter*, 31 Wn. App. 883, 886-88, 645 P.2d 60 (1982) (prosecution for both reckless driving and reckless endangerment barred by double jeopardy). The *Blockburger* test, with its emphasis on statutory elements, is simple and objective; and it provides courts, defendants, and prosecutors with certainty as to which offenses are the same for double jeopardy purposes.

We conclude the *Gunwall* factors do not support Mr. Gocken's contention that the state double jeopardy clause provides broader protection to criminal defendants than the federal double jeopardy clause. We hold Const. art. I, § 9 is given the same interpretation the Supreme Court gives to the Fifth Amendment. The *Blockburger* "same elements" test, a test this court has applied in one form or another for nearly 100 years, rather than the *Grady* "same conduct" test, applies to determine whether successive prosecutions violate the double jeopardy clause in Const. art. I, § 9.

## II

Under a *Blockburger* analysis, the Court of Appeals properly held there was no double jeopardy violation under Const. art. I, § 9 for prosecuting Mr. Gocken for possession of a controlled substance with intent to deliver following a plea of guilty to possession of drug paraphernalia.

A person is guilty of possessing drug paraphernalia when: a person uses drug paraphernalia to ingest, inhale, or otherwise introduce a controlled substance into the human body. RCW 69.50.412(1). A person is guilty of possessing a controlled substance with intent to deliver when: with an intent to deliver, a person possesses a controlled substance. RCW 69.50.401(a).

Double jeopardy is avoided under a *Blockburger* analysis because possession of drug paraphernalia and possession of a controlled substance with intent to deliver have separate elements. Possession of drug paraphernalia

requires use of drug paraphernalia, while possession of a controlled substance with intent to deliver does not. Likewise, possession of a controlled substance with intent to deliver requires proof of an intent to deliver a controlled substance while possession of drug paraphernalia does not.

Mr. Gocken argues alternatively that under a *Blockburger* analysis a successive prosecution for possession of marijuana with intent to deliver is barred under *Harris v. Oklahoma*, 433 U.S. 682, 53 L. Ed. 2d 1054, 97 S. Ct. 2912 (1977). Mr. Gocken's contention is that possession of drug paraphernalia is a lesser included offense to possession of a controlled substance with intent to deliver. We disagree. Neither of these offenses is a lesser included offense of the other. *See State v. Williams*, 62 Wn. App. 748, 753, 815 P.2d 825 (1991), *review denied*, 118 Wn.2d 1019 (1992).

Thus, Const. art. I, § 9 does not bar a prosecution for possession of marijuana with intent to deliver subsequent to a conviction for possession of drug paraphernalia. We affirm the Court of Appeals and remand the case to Spokane County Superior Court.

### III

Under a *Blockburger* analysis, the Court of Appeals properly held there was no double jeopardy violation under Const. art. I, § 9 for prosecuting Ms. Crisler as an accomplice to theft in the second degree following a plea of guilty to criminal conspiracy.

A person is guilty of criminal conspiracy when: with intent that conduct constituting a crime be performed, he or she agrees with one or more persons to engage in the crime, and any one of them takes a substantial step in pursuance of such agreement. RCW 9A.28.040(1). A person is guilty of accomplice liability when: with knowledge that it will promote or facilitate the commission of the crime, he or she solicits, commands, encourages, or requests such other person to commit the crime or aids such other

person in planning or committing the crime. RCW 9A.08.020(3).

Double jeopardy is avoided under a *Blockburger* analysis because criminal conspiracy and accomplice liability have separate elements. Criminal conspiracy requires an element of intent, while accomplice liability requires a lesser culpable state of knowledge. Likewise, accomplice liability requires a completed crime, while criminal conspiracy requires only proof that one of the conspirators took a substantial step toward the commission of the agreed crime, which can consist of mere preparatory conduct. *See State v. Toomey*, 38 Wn. App. 831, 839-40, 690 P.2d 1175 (1984), *review denied*, 103 Wn.2d 1012, *cert. denied*, 471 U.S. 1067 (1985); *State v. Dent*, 123 Wn.2d 467, 477, 869 P.2d 392 (1994).

Thus, Const. art. I, § 9 does not bar a prosecution for accomplice liability to second-degree theft subsequent to a conviction for criminal conspiracy. We affirm the Court of Appeals.

CONCLUSION

The double jeopardy clause in Const. art. I, § 9 is given the same interpretation the Supreme Court gives to the double jeopardy clause in the Fifth Amendment. The *Blockburger* "same elements" test, a test this court has applied for nearly 100 years, applies to determine whether successive prosecutions violate the double jeopardy clause in Const. art. I, § 9. The Court of Appeals' decisions are affirmed.

DURHAM, C.J., DOLLIVER and SMITH, JJ., and ANDERSEN and BRACHTENBACH, JJ. Pro Tem., concur.

MADSEN, J., (concurring in part, dissenting in part) — While I agree with the result the majority reaches, I cannot agree with the majority's analysis of the issue presented in these cases under *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986) and *Blockburger*

*v. United States*, 284 U.S. 299, 76 L. Ed. 306, 52 S. Ct. 180 (1932). Since 1896, this state has had its own double jeopardy analysis under article I, section 9 of the Washington State Constitution. *See State v. Reiff*, 14 Wash. 664, 45 P. 318 (1896). In this context, the majority's analysis is incorrect because it completely ignores this state's preexisting, independent analysis of double jeopardy. *See State v. Wittenbarger*, 124 Wn.2d 467, 493, 880 P.2d 517 (1994) (Johnson, J., dissenting).

The two-pronged aim of *Gunwall* is to assist this court in assuring (1) adequate briefing from counsel where a decision based on independent state constitutional grounds is urged, and (2) that where such independent grounds are appropriate, the resulting decision "will be made for well founded legal reasons". *Gunwall*, at 62-63. *Gunwall* was merely intended to be a tool in the development of a principled analysis in cases where an issue is undecided under the state constitution. Where this court has already determined the particular state constitutional issue, *Gunwall* has no application because this court has its own preexisting law to guide its interpretation.

Yet the majority treats *Gunwall* as a talisman, to be invoked simply because the parties raise an issue under the state constitution. The fact that the parties present a *Gunwall* analysis, however, should not be an open invitation to substitute our current notion of justice, or the notion currently embraced by the United States Supreme Court, for that of our predecessors. Instead, this court must itself critically examine whether such an analysis is justified in the case before it.

Any other result ignores the purposes of *Gunwall* and causes a number of problems. For example, disregard of longstanding state constitutional analysis introduces unnecessary confusion and endangers the stability of state law. When this state's analysis is tied to the whims of the federal courts, state law may have to be modified frequently to adjust to later circuit splits on the issue and the United States Supreme Court's retraction of its earlier

decisions. *See, e.g., United States v. Dixon,* 509 U.S. 688, 125 L. Ed. 2d 556, 573, 113 S. Ct. 2849 (1993) (overruling *Grady v. Corbin,* 495 U.S. 508, 109 L. Ed. 2d 548, 110 S. Ct. 2084 (1990)). Judicial efficiency will be lost because every time the Supreme Court changes its mind, this court will be called to revisit the issue. Finality is also sacrificed because state decisions tied to federal law may be open to reversal by the Supreme Court. Most importantly, independent state constitutional analysis is lost somewhere in the ever-shifting shadow of the federal courts which are no less political and perhaps more so than our own state courts. See generally James W. Talbot, Comment, *Rethinking Civil Liberties Under the Washington State Constitution,* 66 Wash. L. Rev. 1099 (1991); Linda White Atkins, *Recent Developments, Federalism, Uniformity, and the State Constitution* — State v. Gunwall, 106 Wn. 2d 54, 720 P.2d 808 (1986), 62 Wash. L. Rev. 569 (1987). This court should, instead, preference independent resolution of state constitutional questions under a longstanding body of state law.

Specifically, this state has a double jeopardy analysis under the state constitution predating the United States Supreme Court application of its double jeopardy analysis to the states through the Fourteenth Amendment in *Benton v. Maryland,* 395 U.S. 784, 794, 23 L. Ed. 2d 707, 89 S. Ct. 2056 (1969), and has continued to apply this independent analysis until the majority's holding today. In 1896, this court first set out Washington's "same evidence" rule of construction. *State v. Calle,* 125 Wn.2d 769, 777, 888 P.2d 155 (1995); *Reiff,* at 667-68. Under this rule, a defendant's double jeopardy rights are violated if he or she is convicted of offenses which are identical in both fact and law. See, e.g., *Calle,* at 777; *In re Fletcher,* 113 Wn.2d 42, 47-49, 776 P.2d 114 (1989); *State v. Caliguri,* 99 Wn.2d 501, 512-13, 664 P.2d 466 (1983); *State v. Vladovic,* 99 Wn.2d 413, 423, 662 P.2d 853 (1983); *State v. Johnson,* 96 Wn.2d 926, 933, 639 P.2d 1332 (1982); *State v. Morlock,* 87 Wn.2d 767, 771, 557 P.2d 1315 (1976); *State v. Roybal,* 82 Wn.2d 577, 581-82, 512 P.2d 718 (1973); *State v. La Porte,*

58 Wn.2d 816, 818-19, 365 P.2d 24 (1961); *Huffman v. Smith*, 34 Wn.2d 914, 920, 210 P.2d 805 (1949); *State v. Barton*, 5 Wn.2d 234, 237-38, 105 P.2d 63 (1940); *State ex rel. Foley v. Yuse*, 191 Wash. 1, 3, 70 P.2d 797 (1937); *State v. Phillips*, 179 Wash. 607, 611, 38 P.2d 372 (1934); *State v. Kingsbury*, 147 Wash. 426, 432, 266 P. 174 (1928); *State v. Peck*, 146 Wash. 101, 107-08, 261 P. 779 (1927); *State v. Elliott*, 69 Wash. 62, 64, 124 P. 212 (1912); *State v. Campbell*, 40 Wash. 480, 483, 82 P. 752 (1905); *Reiff*, at 667-68. While this test at the present time is effectively "very similar" to the rule set forth in *Blockburger* and reestablished by *Dixon*, tying state analysis to shifting federal analysis makes no sense legally or as a matter of policy when this state has had its own analysis under the state constitution for a great number of years. *Calle*, at 777. Furthermore, if left standing as independent tests, these tests may very well diverge in the future.

The peculiar problems, which the dissent points out, with subsequent prosecutions are not without remedy even where double jeopardy is not implicated. While not alluded to by either the majority or the dissent, counsel can challenge and remedy multiple charging problems like those of *State v. Crisler*, 73 Wn. App. 219, 868 P.2d 204 (1994) by making a timely motion to dismiss the charges for failure to join related offenses pursuant to CrR 4.3(c). *See State v. Pelkey*, 109 Wn.2d 484, 491, 745 P.2d 854 (1987); *State v. Anderson*, 96 Wn.2d 739, 740-41, 638 P.2d 1205, *cert. denied*, 459 U.S. 842 (1982). Such motions are to be granted unless the court finds that the ends of justice would be defeated because the prosecuting attorney was unaware of the facts supporting the related offense or did not have sufficient evidence at the time of the first trial or because of other reasons. CrR 4.3(c)(2), (3).

For the reasons set out above, I cannot agree with the majority. I strongly believe that we should adhere to our longstanding, independent state analysis. Under that analysis, I do agree with the majority's ultimate result. I would therefore uphold the Court of Appeals under *Reiff* and its state progeny.

JOHNSON, J. (dissenting) — In *State v. Jackson*, 102 Wn.2d 432, 688 P.2d 136 (1984), a case analytically similar to the cases we decide today, this court refused to follow the shifting sands of federal jurisprudence when interpreting Const. art. I, § 7, instead maintaining a strong commitment to independent state constitutional analysis. I refuse to subscribe to the notion the majority proposes— that our constitution should be interpreted no differently from the federal constitution. This notion ignores our history of state constitutional jurisprudence. I therefore dissent.

In this case the majority effectively wipes out almost 100 years of this court's double jeopardy jurisprudence and eviscerates most, if not all, double jeopardy protections. The majority concludes state constitutional double jeopardy protection is no broader than federal constitutional double jeopardy protection. By resting the meaning and effect of our state constitution's double jeopardy protection on the United States Supreme Court's decision in *United States v. Dixon*, 509 U.S. 688, 125 L. Ed. 2d 556, 113 S. Ct. 2849 (1993), the majority unnecessarily and unwisely retreats from our recent decision in *State v. Laviollette*, 118 Wn.2d 670, 826 P.2d 684 (1992), in which we held unanimously that the "same conduct" test of *Grady v. Corbin*, 495 U.S. 508, 109 L. Ed. 2d 548, 110 S. Ct. 2084 (1990) is necessary to ensure double jeopardy protection in the context of successive prosecutions. *Laviollette* is consistent with the history of Const, art. I, § 9 and should not be abandoned. Prior reliance on federal cases does not preclude us from taking a more expansive view of article I, section 9 where the United States Supreme Court limits federal guaranties in a manner inconsistent with our prior pronouncements. *Jackson*, 102 Wn.2d at 439.

We should not deny double jeopardy protection in unwarranted reliance on *Dixon*. To do so effectively abolishes the courts' power to enforce constitutional double jeopardy protection by granting the Legislature and

prosecutors the power to determine whether two offenses are the same. I would hold the test adopted in *Laviollette* is necessary, in the context of successive prosecutions, to protect the core interests which historically have animated double jeopardy protection under article I, section 9 of the Washington State Constitution.

In support of its decision to adopt the federal "same elements" test, the majority asserts Const. art. I, § 9 traditionally has been given the same interpretation as the analogous provision in the Fifth Amendment. Majority, at 102. This assertion is misleading and ignores most of the history of both federal and Washington State double jeopardy jurisprudence. The federal "same elements" test was announced by the Supreme Court in *Gavieres v. United States*, 220 U.S. 338, 342, 55 L. Ed. 489, 31 S. Ct. 421 (1911), in a case involving successive prosecutions, and in *Blockburger v. United States*, 284 U.S. 299, 304, 76 L. Ed. 306, 52 S. Ct. 180 (1932), in a case involving multiple punishments prosecuted in a single proceeding.

In contrast, this court's interpretation of article I, section 9 was in place before either *Gavieres* or *Blockburger* was announced and has developed parallel to Fifth Amendment jurisprudence, not in reliance on it.[7] That our interpretation has been the same as or similar to Federal Fifth Amendment jurisprudence is a result of this court's reliance on the common law and on the history of double jeopardy in Anglo-American criminal law to define the "same offense" for double jeopardy purposes. Therefore, unless we now intentionally decide to proceed in lockstep with federal double jeopardy analysis, *Dixon* is of no consequence to this court's interpretation of article I, section 9.

The majority's *Gunwall* analysis is flawed, especially in

---

[7]This court's only case specifically applying the *Blockburger* test is *State v. Maxfield*, 125 Wn.2d 378, 886 P.2d 123 (1994), which involved multiple punishments imposed in a single prosecution. Apart from a tangential reference to *Blockburger* in *State v. Swindell*, 93 Wn.2d 192, 195, 607 P.2d 852 (1980), we have never applied either *Gavieres* or *Blockburger* in the context of multiple prosecutions.

its treatment of the fourth *Gunwall* factor, the examination of preexisting state law. *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986). The earliest Washington case interpreting Const. art. I, § 9 is *State v. Reiff*, 14 Wash. 664, 45 P. 318 (1896). The defendant was tried and acquitted for larceny of a lady's beaver shoulder cape. Subsequently, he was charged with obtaining the cape under false pretenses and he pleaded "former acquittal" as a bar to the second prosecution. This court rejected the defendant's argument that article I, section 9 barred a second prosecution based on the *transaction* set out in the former prosecution:

> There are elements requisite to each [offense] which are not necessary to the other, and proof of the offense charged in either of the informations would not be sufficient to sustain a conviction under the other. To sustain the plea, the offenses must be identical both in fact and in law.
>
> . . .
>
> "The test is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same *offense*."

*Reiff*, 14 Wash. at 667-68 (quoting *Morey v. Commonwealth*, 108 Mass. 433, 434 (1871)).

We consistently followed *Reiff* over the next several decades, although our application focused almost exclusively on whether one offense was a lesser included offense within the other. *See, e.g., State v. Campbell*, 40 Wash. 480, 82 P. 752 (1905); *State v. Elliott*, 69 Wash. 62, 124 P. 212 (1912); *State v. Peck*, 146 Wash. 101, 261 P. 779 (1927); *State v. Kingsbury*, 147 Wash. 426, 266 P. 174 (1928); *State v. Phillips*, 179 Wash. 607, 38 P.2d 372 (1934); *State v. Barton*, 5 Wn.2d 234, 105 P.2d 63 (1940); *In re Huffman*, 34 Wn.2d 914, 210 P.2d 805 (1949); *State v. La Porte*, 58 Wn.2d 816, 365 P.2d 24 (1961).

In *State v. Roybal*, 82 Wn.2d 577, 512 P.2d 718 (1973), we distinguished two types of tests developed to define "same offense" in double jeopardy analysis. Under the

"same transaction" test, the offenses are the same if they "grow out of a single criminal act, occurrence, episode, or transaction", regardless of the similarity of the offenses. Roybal, 82 Wn.2d at 581 (quoting *Ashe v. Swenson*, 397 U.S. 436, 453, 25 L. Ed. 2d 469, 90 S. Ct. 1189 (1970) (Brennan, J., concurring). The "same evidence" test, which compares the evidence and the law, generally appears in one of three versions:

> *Required evidence* tests hold that offenses are "the same" if the elements of one are sufficiently similar to the elements of another. *Alleged evidence tests* find offenses the same if there is sufficient similarity between the allegations of the two indictments. *Actual evidence tests* find the offenses the same if there is a similarity between the evidence presented at the two trials.

*Roybal*, 82 Wn.2d at 580-81 (citing Notes & Comments, *Twice in Jeopardy*, 75 Yale L.J. 262, 269-70 (1965)). We characterized *Reiff* and its progeny as having adopted the "required evidence" test: "the collective thrust of our prior decisions has been to look at the required evidence necessary to sustain each charge". *Roybal*, 82 Wn.2d at 582. *Accord State v. Morlock*, 87 Wn.2d 767, 771, 557 P.2d 1315 (1976). Roybal relied solely on Washington cases and did not cite either *Gavieres* or *Blockburger*. Our subsequent cases have relied on *Roybal* for the proposition that no double jeopardy exists unless the evidence required to support a conviction on one offense would be sufficient to warrant a conviction on the other. *See, e.g., State v. Claborn*, 95 Wn.2d 629, 628 P.2d 467 (1981); *State v. Johnson*, 96 Wn.2d 926, 639 P.2d 1332 (1982); *State v. Vladovic*, 99 Wn.2d 413, 662 P.2d 853 (1983); *State v. Caliguri*, 99 Wn.2d 501, 664 P.2d 466 (1983).

The *Roybal* test has been interpreted as involving two components: (1) the two offenses must be factually the same, so that proof of one offense necessarily would also prove the other; and (2) each offense, as charged, must include an element not included in the other. *In re Fletcher*, 113 Wn.2d 42, 47-49, 776 P.2d 114 (1989). It is

not readily apparent how a court may determine offenses are not *factually* the same, independent of a determination the offenses contain different elements, unless the defendant's conduct is examined. The *Fletcher* court cited two examples, both of which involved sequential criminal conduct, and concluded Fletcher's first offenses (robbery and kidnapping) were completed before the later one (assault) began, so that "different evidence would be used to prove the assault than would be used to prove the earlier crimes". *Fletcher*, 113 Wn.2d at 49. Nothing in *Fletcher* suggests how to evaluate whether simultaneous or temporally overlapping offenses are factually the same under *Roybal* and *Vladovic*. If such an evaluation cannot be done, the two-part test collapses into only a comparison of the elements of the offenses charged, which fails to give meaning to our longstanding requirement that the offenses must be "identical both in fact and in law" to sustain a plea of former jeopardy. *Reiff*, 14 Wash. at 667; *State ex rel. Foley v. Yuse*, 191 Wash. 1, 3, 70 P.2d 797 (1937); *Roybal*, 82 Wn.2d at 581. The only clear way to do such an evaluation is to consider whether the offenses charged are based on the same conduct.

The United States Supreme Court recognized the importance of considering the conduct on which the charged offenses are based when it raised the threshold double jeopardy protection by adding a second step to double jeopardy analysis in *Grady v. Corbin*, 495 U.S. 508, 109 L. Ed. 2d 548, 110 S. Ct. 2084 (1990). The first step was the traditional *Blockburger* test to determine whether one offense is a lesser included offense of the other; the second step was a determination whether the State, "to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted". *Grady*, 495 U.S. at 521. We applied the two-part *Grady* test in *Laviollette*, finding the second step of the test necessary to ensure adequate double jeopardy protection in the context of successive prosecutions. *Laviollette*, 118 Wn.2d at 676.

*Grady* was overruled by *Dixon*, in a five-to-four decision

purporting to reinstate the traditional Blockburger test. *Laviollette*'s discussion of the *Blockburger* test is instructive to distinguish the analysis under article I, section 9, as developed by this court, from the *Blockburger* analysis, thereby showing why *Dixon* does not control our interpretation of article I, section 9:

> The United States Supreme Court has stated that [the double jeopardy clause] embodies three protections: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." (Footnotes omitted.) *North Carolina v. Pearce*, 395 U.S. 711, 717, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969). For purposes of double jeopardy, perhaps one of the most vexing issues has been to determine what "the same offense" means . . . .
>
> . . . .
>
> In determining what the "same offense" is for double jeopardy purposes, this court has applied a test that was basically identical to the *Blockburger* test. *State v. Roybal*, 82 Wn.2d 577, 512 P.2d 718 (1973). Although denominated a "same evidence" test, the court's analysis in Roybal indicates that it focused primarily on whether or not each offense contained "an additional element not included in the other." *Roybal*, 82 Wn.2d at 582.
>
> The *Blockburger* test, however, was developed in the context of double jeopardy challenges to multiple punishments imposed in a single prosecution. In several decisions that preceded *Grady*, it was apparent that the *Blockburger* test was not the exclusive means of determining whether multiple prosecutions violated double jeopardy. *See, e.g., Illinois v. Vitale*, 447 U.S. 410, 65 L. Ed. 2d 228, 100 S. Ct. 2260 (1980); *Brown v. Ohio*, 432 U.S. [161,] 166 n.6 [53 L. Ed. 2d 187, 97 S. Ct. 2221 (1977)]. The Court in *Grady* described how multiple prosecutions raise more serious concerns than multiple punishments imposed in a single proceeding. For example, multiple prosecutions allow the State, with its greater resources, to subject a defendant to the expense and ordeal of multiple trials. *Grady*, 495 U.S. at 518. Moreover, allowing the State to proceed in successive trials gives it the opportunity to hone its trial strategies and perfect its evidence. *Grady*, 495 U.S. at 518.

*Laviollette*, 118 Wn.2d at 674-76. Three points we made in *Laviollette* are significant: (1) the *Roybal* test, derived from the *Reiff* test, was developed independently of federal pronouncements, including *Blockburger*; (2) *Blockburger* was developed in the context of a single prosecution imposing multiple punishments, not that of multiple prosecutions for the same offense; and (3) serious additional concerns, not present in a single prosecution involving multiple punishments, are raised in the context of multiple prosecutions and these additional concerns are not addressed in the *Blockburger* test.

Much of Justice Scalia's legal analysis in *Dixon* was a debate with Justice Souter over whether the *Blockburger* test or the *Grady* test better articulated the Court's double jeopardy jurisprudence. One commentator suggests this historical debate is futile because it fails to address fundamental changes in the nature of criminal prosecutions that have occurred over the last two centuries:

> Under English and early American common law, the number of offenses for which a defendant could be charged was extremely limited, and the offenses were broad in scope. Today, however, there are countless offenses distinguishable only by fine nuances. Therefore, a modern prosecutor could prosecute a defendant repeatedly simply by making minor alterations to the criminal charges each time. Moreover, at common law the conviction rate was extremely high and most convicted felons were either deported or executed. Thus, defendants were rarely prosecuted twice for the same offense.
>
> Additionally, the power of the prosecutor has changed over time. At common law, the prosecutor was restrained by very formalistic procedural rules. For instance, if there was any disparity between the facts set forth in the indictment and the evidence presented at trial, the case was dismissed. The prosecutor also was not allowed to amend the indictment. The purpose of these rules was to prevent "arbitrary multiplications of offenses and extension of the criminal law." Today, these formalities are gone, and prosecutors are given broad discretion in prosecuting defendants. Consequently, the Double Jeopardy Clause has great significance in today's society because it is one of the only limitations on the prosecutor's power. Because the definitional structure of crimes and the

power of the prosecutor has changed over time, any definition of when two offenses are the same that comports with historical interpretations of the Clause will not adequately protect defendants from double jeopardy in the modern criminal justice system.

(Footnotes omitted.) Kirstin Pace, *Fifth Amendment—The Adoption of the "Same Elements" Test: The Supreme Court's Failure To Adequately Protect Defendants From Double Jeopardy*, 84 J. Crim. L. & Criminology 769, 795-96 (1994). Pace persuasively argues the focus of inquiry properly should be on the interests double jeopardy is intended to protect. Applying this focus, it is clear the Blockburger "same elements" test, in the context of multiple prosecutions, does not adequately protect the interests underlying Const. art. I, § 9, so that Dixon neither overrules Laviollette nor mandates that this court adopt the Blockburger test.

We have unambiguously and repeatedly identified the core interest our double jeopardy clause was intended to protect:

> "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

*State v. Schoel*, 54 Wn.2d 388, 391, 341 P.2d 481 (1959) (quoting *Green v. United States*, 355 U.S. 184, 187-88, 2 L. Ed. 2d 199, 78 S. Ct. 221, 61 A.L.R.2d 1119 (1957)); *Roybal*, 82 Wn.2d at 579 (quoting *Green*); *Caliguri*, 99 Wn.2d at 510 (quoting *Green*).

By blindly following *Dixon*, the majority fails to protect against vexatious multiple prosecutions. *Dixon*'s inflexible application of the same elements test abrogates double jeopardy protection in two key ways: (1) it places ultimate

control of double jeopardy protection in the hands of the Legislature, which can allow repeated prosecution of a defendant for the same conduct simply by manipulating the definitions of statutory offenses; and (2) it ignores the serious concerns raised in multiple prosecutions, especially that allowing the State to attempt repeatedly to convict a defendant subjects that person to unwarranted expense and ordeal and gives prosecutors an opportunity to perfect their trial strategies and presentation of evidence, thus increasing the risk of an erroneous conviction. *See Laviollette*, 118 Wn.2d at 675-76. *See also Grady*, 495 U.S. at 520 (if only the *Blockburger* test were used to determine "same offense", the defendant in *Grady* could be tried four separate times for one criminal act).

By relying solely on a rigid and mechanical examination of the elements of the offenses charged, the majority effectively abolishes the ability of our courts to enforce our constitutional guaranty against double jeopardy. *Dixon* notwithstanding, this court should not abdicate its obligation to ensure all citizens receive the fundamental protections guaranteed under our state constitution. To ensure double jeopardy protection against multiple prosecutions for the same offense, I merely would follow the two-part test applied in *Laviollette*, 118 Wn.2d at 676: (1) determine whether the offenses have identical statutory elements or one is a lesser included offense of the other; and (2) determine whether the government, to establish an essential element of the offense charged in a subsequent prosecution, will prove conduct constituting an offense for which the defendant already has been prosecuted.

Applying *Laviollette*'s two-part test, I would affirm the conviction in *State v. Gocken*, 72 Wn. App. 908, 866 P.2d 694 (1994) and reverse the theft conviction in *State v. Crisler*, 73 Wn. App. 219, 868 P.2d 204 (1994).

## State v. Gocken

On October 28, 1990, a Spokane police officer arrested

Mr. Gocken for possession of drug paraphernalia, in violation of RCW 69.50.412(1). The police then searched the car and arrested Mr. Gocken for possession of a controlled substance with intent to deliver, in violation of RCW 69.50.401(a). He was charged with possession with intent to deliver on January 14, 1991, well before he pleaded guilty on May 9, 1991, to drug paraphernalia use.

The first inquiry under *Laviollette* is whether one offense is a lesser included offense of the other, or whether each offense contains an element not contained in the other. RCW 69.50.412(1) contains the following elements: (1) *use of drug paraphernalia* (as defined in RCW 69.50.102), (2) to *"inject, ingest, inhale, or otherwise introduce into the human body"*, (3) a controlled substance. (Italics mine.) As applied here, RCW 69.50.401(a) contains the following elements: (1) *possession*, (2) of a controlled substance, (3) *with intent to deliver* (which may be inferred from the quantity of marijuana possessed). The emphasized elements are not present in both offenses; thus, the first inquiry suggests these are different offenses.

The second inquiry under *Laviollette* is whether, to establish an essential element of the offense charged in a subsequent prosecution the State will prove conduct that constitutes an offense for which the defendant has already been charged. The conduct common to the two offenses is Mr. Gocken's possession of marijuana—absent some linkage to marijuana, such as residue in the so-called "marijuana pipe" found in Mr. Gocken's car or simultaneous possession of marijuana, Mr. Gocken's pipe could not be identified as drug paraphernalia; possession provides that linkage. However, mere possession will prove neither offense for which Mr. Gocken was charged. Under RCW 69.50.412(1), the State must prove use of the pipe to inhale marijuana; under RCW 69.50.401(a), the State also must prove intent to deliver.

There was no double jeopardy under *Laviollette*. Mr. Gocken was charged with two separate offenses arising from the same transaction, but not from the same conduct.

State v. Crisler

Ms. Crisler was charged with criminal conspiracy under RCW 9A.28.040(1), to which she pleaded guilty in Douglas County District Court on December 10, 1991. The court accepted the plea and entered a finding of guilt, but continued sentencing. On December 11, 1991, Ms. Crisler was charged in Douglas County Superior Court with theft in the second degree, in violation of former RCW 9A.56.040. In the trial for second-degree theft, the jury was instructed on the elements of second-degree theft and on accomplice liability; the jury returned a guilty verdict on March 11, 1992.

RCW 9A.28.040(1) contains the following elements: (1) agreement with one or more persons, (2) to engage in or cause criminal conduct, (3) with intent to engage in or cause such conduct, and (4) any such person takes a substantial step in pursuing the agreement. Former RCW 9A.56.040 contains the following elements: (1) theft, (2) of property or services, (3) valued at more than $250 but not more than $1,500. Accomplice liability, as defined in WPIC 10.51 and as read to the jury, contains the following elements: (1) agreement to aid another person (2) in planning or committing a crime, (3) with knowledge it will promote or facilitate the commission of a crime.

Using these definitions, accomplice liability is a lesser included offense to criminal conspiracy. The intent element of conspiracy encompasses the knowledge element of accomplice liability, and both offenses require only an agreement with another person to plan or commit a crime. As defined for the jury, conspiracy requires a substantial step, while accomplice liability does not—that is the only material difference in the offenses. The majority's conclusion to the contrary is not supported by the cases cited. See majority, at 109.[8]

As the *Crisler* trial court defined accomplice liability, it

---

[8]*State v. Dent*, 123 Wn.2d 467, 477, 869 P.2d 392 (1994) did not address accomplice liability. *State v. Toomey*, 38 Wn. App. 831, 839-40, 690 P.2d 1175 (1984), *review denied*, 103 Wn.2d 1012, *cert. denied*, 471 U.S. 1067 (1985) does not

contains no element not also contained in conspiracy, making accomplice liability a lesser included offense of conspiracy. Therefore, under either *Laviollette* or *Dixon*, Ms. Crisler was placed in double jeopardy when charged with and convicted of accomplice liability after pleading guilty to conspiracy and having her plea accepted by the court.

UTTER, J. Pro Tem., concurs with JOHNSON, J.

state the proposition for which the majority cites it (that accomplice liability requires a completed crime while conspiracy liability requires only a substantial step).