[Nos. 34331-2-II; 35662-7-II. Division Two. May 15, 2007.]

THE STATE OF WASHINGTON, *Respondent*, v. RANDY J. SUTHERBY, *Appellant*.

*In the Matter of the Personal Restraint of* RANDY J. SUTHERBY, *Petitioner*.

610

*James E. Lobsenz* (of *Carney Badley Spellman*), for appellant/petitioner.

*H. Steward Menefee, Prosecuting Attorney*, and *Gerald R. Fuller, Deputy*, for respondent.

¶1 QUINN-BRINTNALL, J. — A jury convicted Randy Sutherby of first degree child rape, first degree child molestation, and seven counts of possession of depictions of minors engaged in sexually explicit conduct. Sutherby argues on appeal that (1) the trial court used the wrong unit of prosecution under the child pornography statute, former RCW 9.68A.070 (1990); (2) the child's mother gave impermissible opinion testimony that E.K. was telling the truth when she said that Sutherby raped her; and (3) his attorney should have moved to sever the child rape charges from the child pornography charges. We agree with Sutherby that the proper unit of prosecution under former RCW 9.68A.070 is one for contemporaneous possession of child pornography in the same location. And we agree that the trial court erred when it allowed the child's mother's opinion testimony. Accordingly, we reverse and remand for a new trial on the first degree child rape and child molestation charges. But because our review of the record clearly establishes that the error in admitting the mother's improper opinion testimony did not affect the jury's deliberations on the pornography charges, we affirm and merge those convictions and remand for resentencing on one count of possession of depictions of minors engaged in sexually explicit conduct.

# FACTS

BACKGROUND

¶2 The State alleged the following facts. On Christmas Eve, Sutherby crawled into bed with his five-year-old granddaughter, E.K., and inserted his finger repeatedly into her vagina. E.K. told her grandmother the next day that her genitals hurt, and she expressed fear at the prospect of spending more time with Sutherby.

¶3 Two days later, E.K. also reported the incident to her mother and identified Sutherby as the assailant. E.K.'s mother immediately took E.K. to Dr. Sharon Ahart, who interviewed her and received a similar description of events. Dr. Ahart noted trauma to E.K.'s hymen and irritation to her genitals that may have been caused by rubbing.

¶4 Detective Edward McGowan investigated the charge. He eventually arrested Sutherby and read him his *Miranda*[1] rights. With Sutherby's consent, law enforcement seized two of his personal computers from his home. Investigators found dozens of digital files on the computers containing photographs and films depicting prepubescent children engaged in sexual acts.

PROCEDURE

¶5 The State charged Sutherby by amended information with (1) 1 count of first degree child rape, (2) 1 count of first degree child molestation, and (3) 10 counts of possession of depictions of minors engaged in sexually explicit conduct. The trial court consolidated five of the pornography counts into two counts on the ground that the proper unit of prosecution under former RCW 9.68A.070 is per minor and some of the counts related to different images of the same minors. The jury convicted Sutherby on all counts and found sexual motivation on each of the seven counts of possessing depictions of minors engaged in sexually explicit conduct.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

¶6 In this appeal, we address two issues: (1) what is the proper unit of prosecution under the child pornography statute, former RCW 9.68A.070, and (2) does the trial court's error in allowing E.K.'s mother to give impermissible opinion testimony require reversal of Sutherby's first degree child rape and molestation convictions?

## ANALYSIS

UNIT OF PROSECUTION

¶7 Sutherby argues that the trial court erred when it ruled that the proper unit of prosecution under former RCW 9.68A.070 was per minor child depicted.[2] The State charged Sutherby with 10 counts under former RCW 9.68A.070—one count for each of 10 different digital files.[3] The trial court held that the proper unit of prosecution was one count for each child who was photographed or filmed, and so it consolidated some, but not all, counts because the consolidated counts related to different visual matter depicting the same child. We reverse.

¶8 The double jeopardy clause of the Fifth Amendment protects a defendant from being punished multiple times for the same offense. *State v. Gocken*, 127 Wn.2d 95, 100, 896 P.2d 1267 (1995). When a defendant is charged with violating one statute multiple times, the proper inquiry for double jeopardy analysis is what "unit of prosecution" the legislature intended. *State v. Adel*, 136 Wn.2d 629, 633-34, 965 P.2d 1072 (1998).

---

[2] Former RCW 9.68A.070 reads: "A person who knowingly possesses visual or printed matter depicting a minor engaged in sexually explicit conduct is guilty of a class C felony."

[3] The parties did not make the photographic exhibits part of the appellate record, and we find no clear expression that the counts relate to different visual matter. But the file names are listed at Clerk's Papers 111-12, and an independent review of exhibit 5, the entire seized contents of Sutherby's computer, reveals that each count related to a different digital file. And each digital file contained different visual matter. Counts 6 and 7 relate to different portions of the same film, and counts 9 and 10 relate to different photographs of the same girl. The trial court consolidated those counts, and so the question of whether they constituted the same criminal conduct was not before that court.

¶9 For this analysis, the first task is to closely review the statute to determine what act or course of conduct it prohibits. *State v. Root*, 141 Wn.2d 701, 706, 9 P.3d 214 (2000). Sutherby was charged with multiple violations of former RCW 9.68A.070. That statute provides: "A person who knowingly possesses visual or printed matter depicting a minor engaged in sexually explicit conduct is guilty of a . . . felony." And the legislature defined "visual or printed matter" as "*any* photograph or other material that contains a reproduction of a photograph." RCW 9.68A.011(2) (emphasis added).

¶10 The debate here focuses on the legislature's use of the word "any." Sutherby argues that "any" means "one or more" and that, applying this definition, possessing child pornography at any one time and general location is typically[4] a single unit of prosecution, regardless of the quantity of material possessed. The State argues that "any" means "one" and that under this definition, each distinct material, such as a photograph, film, or digital file is one unit.

¶11 "The word 'any' has troubled many courts." *United States v. Reedy*, 304 F.3d 358, 365 n.7 (5th Cir. 2002). It denotes a full spectrum of quantities, including: (1) one; (2) one, some, or all regardless of quantity; (3) one or more; (4) great, unmeasured, or unlimited in amount; and (5) all. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 97 (1976). The placement of the word in RCW 9.68A.011(2) provides no guidance as to the legislature's intended use in this context. The statute is equally sensible using the acceptable dictionary definitions of (1) one; (2) one, some, or all; or (3) one or more. Under these readings, the legislature may have

---

[4] We do not address special circumstances not present here, such as possession in two distinct locations or at two distinct times. *See Adel*, 136 Wn.2d at 640-41 (Talmadge, J., concurring) (noting that, despite the majority's holding that misdemeanor possession of marijuana was one unit of prosecution even though two quantities were found in the defendant's contemporaneous possession, a case-by-case analysis is required to determine whether, for instance, one quantity was in Seattle and another in Spokane or one quantity was consumed before another was possessed).

intended that the statute ban the possession of (1) one photograph or other material that contains a reproduction of a photograph; (2) one, some, or all, regardless of quantity, photographs or other material containing a reproduction of a photograph; or (3) one or more photographs or other material containing a reproduction of a photograph. A reading of the statute's plain meaning fails to reveal the legislature's intended answer to the question of how many is "any" and, thus, does not set a unit of prosecution.

¶12 If the legislature fails to denote the unit of prosecution in the statute, courts must resolve the ambiguity and must do so in favor of the defendant charged with having violated the statute. *Adel*, 136 Wn.2d at 634-35 (citing *Bell v. United States*, 349 U.S. 81, 84, 75 S. Ct. 620, 99 L. Ed. 905 (1955)). In *Bell*, the United States Supreme Court held that when "argumentative skill . . . could persuasively and not unreasonably reach either of the conflicting constructions," it is improper to resolve the question by turning a single transaction into multiple offenses. *Bell*, 349 U.S. at 83-84. Applying this rule of lenity here to avoid turning a single transaction into multiple offenses, we hold that Sutherby's violation of the statute by simultaneously possessing multiple materials in the same location is one unit of prosecution for which he is subject to only one conviction.

¶13 We are mindful that this decision differs from Division One's recent opinion in *State v. Gailus*, 136 Wn. App. 191, 147 P.3d 1300 (2006). In that case, the court held that the proper unit of prosecution is each photograph, film, or digital file containing a photograph or film. But the *Gailus* court was not asked to interpret the word "any." Its analysis focused instead on whether a compact disc containing multiple images constituted one unlawful act or many. In light of those arguments, we agree that the legislature intended to prohibit possession of the images regardless of the method or medium used to store them. Because *Galius*'s narrow unit of prosecution ruling does not address the

arguments Sutherby raises, it does not apply here.[5] Under our reading of the statute, Sutherby may be convicted of only one count of possession of depiction of a minor engaged in sexually explicit conduct. Thus, Sutherby's convictions on counts 3, 4, 5, 8, 9, 11, and 12 merge and we remand to the trial court for resentencing on a single count.

## MOTHER'S TESTIMONY

¶14 Sutherby also argues that E.K.'s mother's testimony—that her daughter was not lying about Sutherby raping her—deprived him of his right to a jury trial. At trial, E.K.'s mother impermissibly commented on methods she used to determine her daughter's credibility and trained the jury to look for a particular mannerism during E.K.'s testimony to determine whether she was telling the truth.

¶15 The testimony at issue follows in full:

Q And have you taught [E.K.] about telling the truth and the consequences?

A Yes.

Q And how have you done that?

A How?

Q Yeah, what kind of conversations?

A Just—she just knows it's wrong to lie and that she will be punished and you get time outs. She knows it can hurt people and causes problems and it's for her safety too.

Q Can you tell when she has told a fib?

A Yeah.

Q How do you tell that?

A She makes kind of a—tries not to smile, but makes a half smile when she is telling a fib.

---

[5] Sutherby also asserts that the trial court violated his right to a jury trial by finding the fact of the child victims' identities in order to determine the unit of prosecution. Any fact that increases the penalty for a crime beyond the prescribed statutory maximum, besides the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 476, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Because we hold that the time and place of possession determines the number of units of prosecution (charges), we do not address this issue.

Q Ever seen that face or reaction when she was talking about what happened with [Sutherby]?

A No.

1 Report of Proceedings at 33-34. We agree with Sutherby that this testimony was wholly improper and deprived him of his right to have the jury determine E.K.'s credibility.

 ¶16 Generally, no witness may offer testimony in the form of an opinion regarding a witness's credibility; such testimony is unfairly prejudicial to the defendant because it invades the exclusive province of the jury. *State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001). Opinion testimony is testimony based on one's belief or idea rather than on direct knowledge of the facts at issue. *Demery*, 144 Wn.2d at 760 (quoting BLACK'S LAW DICTIONARY 1486 (7th ed. 1999)).

 ¶17 E.K.'s mother offered her opinion on her daughter's credibility by telling the jury that E.K. makes a half smile when she lies, but did not make a half smile when she accused Sutherby of rape. Central issues at trial included the assailant's identity and E.K.'s credibility. E.K.'s mother expressed her opinion about the truth of E.K.'s claim of rape by stating that E.K. had certain mannerisms indicating when she was lying. In essence, E.K.'s mother (1) told the jury that E.K. told the truth when she related the incriminating events to her and (2) gave it information that she claimed would enable the jurors to evaluate E.K.'s testimony: that if E.K. made a half smile while testifying, she was not simply nervous but was fibbing. E.K.'s mother's testimony regarding her daughter's credibility was wholly improper.

¶18 In some instances, a witness who testifies to his belief that the defendant is guilty is merely stating the obvious, such as when a police officer testifies that he arrested the defendant because he had probable cause to believe he committed the offense. *See, e.g., State v. Kirkman*, 159 Wn.2d 918, 155 P.3d 125 (2007). Here, however, E.K.'s mother's testimony was neither cumulative

nor innocuous and the error in admitting it deprived Sutherby of his right to have the jury determine E.K.'s credibility based on its knowledge and experience, without regard to the mother's practice of judging E.K.'s veracity by the child's smile. The error affected the jury deliberations and was not harmless.

¶19 Accordingly, we reverse Sutherby's first degree child rape and first degree child molestation convictions and remand for retrial on counts one and two.[6]

BRIDGEWATER and ARMSTRONG, JJ., concur.

Review granted at 162 Wn.2d 1018 (2008).

---

[6] In his direct appeal and consolidated personal restraint petition, Sutherby also argues that he received ineffective assistance of counsel because his attorney did not move to sever the counts of child rape and child molestation from the counts of possession of depictions of minors engaged in sexually explicit conduct. Our decision obviates the need to address these issues.