[No. 55858-7-I.   Division One.   August 21, 2006.]

THE STATE OF WASHINGTON, *Respondent*, v. MIGUEL ANGEL ESPARZA, *Defendant*, JAMAR ANTONIO BEAVER, *Appellant*.

*Oliver R. Davis* (of *Washington Appellate Project*), for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Dennis J. McCurdy, Deputy,* for respondent.

¶1 GROSSE, J. — Convictions for attempted robbery in the first degree and assault in the second degree violate double jeopardy if, in order to establish the attempted robbery conviction, the State is required to prove facts sufficient to sustain the assault conviction. Likewise, the same two crimes merge for double jeopardy purposes if proof of the assault is necessary to elevate the attempted robbery conviction. Here, Jamar Beaver was convicted of attempted robbery in the first degree and assault in the second degree, where the substantial step toward the robbery was not necessarily the assault. Because it was not required for the State to prove facts sufficient to convict Beaver of second degree assault in order for it to prove Beaver committed the offense of attempted first degree robbery and because it was unnecessary for the State to prove that Beaver engaged in conduct amounting to second degree assault in order to elevate his attempted robbery conviction, Beaver's convictions did not violate double jeopardy.

## FACTS

¶2 On April 2, 2000, Jamar Beaver and Miguel Esparza entered the International Jewelers store in Tukwila. Beaver and Esparza were each carrying a firearm. They entered the store wearing bandanas across their faces and

pointing their guns at the customers and store employees. Immediately upon rushing into the store, they yelled at the customers and employees to put their hands up and announced that it was a robbery.

¶3 Jeweler Frank Ayco was in his office and saw Beaver and Esparza before they saw him. He reached for a gun he had nearby. When Ayco stepped out from behind a partition, he saw Beaver standing five to seven feet away with his gun pointed at Ayco. Fearing Beaver was going to shoot him, Ayco shot Beaver in the chest.

¶4 Esparza's attention was then drawn toward Ayco. Esparza fired two shots in the direction where he believed Ayco was hiding before firing two more shots at the glass doors. Beaver and Esparza then fled through the broken glass doors.

¶5 Beaver, with his gun still in his hand, ultimately collapsed from his injuries in an adjacent parking lot and was taken into custody by the responding police officers. Esparza dropped his gun outside the store as he fled. After a car chase, he was apprehended by the police.

¶6 At a bench trial, Beaver was tried and convicted of the following crimes: attempted robbery in the first degree with a firearm enhancement, assault in the first degree with a firearm enhancement (as an accomplice to Esparza), unlawful possession of a firearm in the first degree, and assault in the second degree with a firearm enhancement (based on Beaver's own conduct).[1]

¶7 Sentencing was held on February 2, 2001. Beaver's counsel failed to timely file a notice of appeal. Beaver filed a pro se CrR 7.8(b) motion on March 29, 2004, seeking modification of his sentence, which was transferred to the Court of Appeals as a personal restraint petition. At a resentencing based on a corrected offender score, the following standard range terms and attached firearm en-

---

[1] Beaver's conviction for assault in the second degree with a firearm enhancement was entered as a lesser included offense of assault in the first degree with a firearm enhancement as charged in count VII of the information.

hancements were imposed: attempted robbery in the first degree, 65.25 months with a 36 month firearm enhancement; first degree assault, 178 months with a 60 month firearm enhancement; unlawful possession of a firearm in the first degree, 36 months; and second degree assault, 43 months with a 36 month firearm enhancement. The trial court ordered the underlying sentences be served concurrently and ordered the enhancements be served consecutively to the longest underlying sentence and consecutive to each other, for a total term of confinement of 310 months, or 25 years and 10 months.

¶8 Beaver now appeals, claiming his convictions violate double jeopardy in a number of respects.

## ANALYSIS

¶9 The guaranty against double jeopardy protects against multiple punishments for the same offense.[2] Because the legislature has the power to define criminal conduct and assign punishment for such conduct, a determination of whether a criminal defendant's double jeopardy rights were violated turns on whether the legislature intended to authorize multiple punishments for the crimes at issue.[3] If the legislature authorized cumulative punishments for the crimes at issue, then double jeopardy is not offended.[4]

¶10 The methods for interpreting legislative intent for double jeopardy purposes have been summarized recently by the Washington Supreme Court in *State v. Freeman*.[5] The Supreme Court stated:

> Because the question largely turns on what the legislature intended, we first consider any express or implicit legislative

---

[2] *State v. Calle*, 125 Wn.2d 769, 776, 888 P.2d 155 (1995) (citing *Whalen v. United States*, 445 U.S. 684, 688, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980)).

[3] *Calle*, 125 Wn.2d at 776.

[4] *State v. Freeman*, 153 Wn.2d 765, 771, 108 P.3d 753 (2005).

[5] *State v. Freeman*, 153 Wn.2d 765, 771, 108 P.3d 753 (2005).

intent. Sometimes the legislative intent is clear, as when it explicitly provides that burglary shall be punished separately from any related crime. RCW 9A.52.050. Sometimes, there is sufficient evidence of legislative intent that we are confident concluding that the legislature intended to punish two offenses arising out of the same bad act separately without more analysis. *E.g.*, [*State v.* ]*Calle*, 125 Wn.2d [769,] 777-78[, 888 P.2d 155 (1995)] (rape and incest are separate offenses).

Second, if the legislative intent is not clear, we may turn to the *Blockburger* test. *See Calle*, 125 Wn.2d at 777-78; *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). If each crime contains an element that the other does not, we presume that the crimes are not the same offense for double jeopardy purposes. *Calle*, 125 Wn.2d at 777; *Blockburger*, 284 U.S. at 304 (establishing "same evidence" or "same elements" test); *State v. Reiff*, 14 Wash. 664, 667, 45 P. 318 (1896) (double jeopardy violated when " 'the evidence required to support a conviction [of one crime] would have been sufficient to warrant a conviction upon the other' ") (quoting *Morey v. Commonwealth*, 108 Mass. 433, 434 (1871)).

When applying the *Blockburger* test, we do not consider the elements of the crime on an abstract level. " '[W]here *the same act or transaction* constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision *requires proof of a fact* which the other does not.' " [*In re Personal Restraint of* ] *Orange*, 152 Wn.2d [795,] 817[, 100 P.3d 291 (2004)] (quoting *Blockburger*, 284 U.S. at 304 (citing *Gavieres v. United States*, 220 U.S. 338, 342, 31 S. Ct. 421, 55 L. Ed. 489 (1911))). However, the *Blockburger* presumption may be rebutted by other evidence of legislative intent. *Calle*, 125 Wn.2d at 778.

Third, if applicable, the merger doctrine is another aid in determining legislative intent, even when two crimes have formally different elements. Under the merger doctrine, when the degree of one offense is raised by conduct separately criminalized by the legislature, we presume the legislature intended to punish both offenses through a greater sentence for the greater crime. [*State v.*] *Vladovic*, 99 Wn.2d [413,] 419[, 662 P.2d 853 (1983)].

Finally, even if on an abstract level two convictions appear to be for the same offense or for charges that would merge, if there is an independent purpose or effect to each, they may be punished as separate offenses. *State v. Frohs*, 83 Wn. App. 803, 807, 924 P.2d 384 (1996) (citing *State v. Johnson*, 92 Wn.2d 671, 680, 600 P.2d 1249 (1979)).[6]

We review Beaver's constitutional challenges de novo[7] and may do so for the first time on appeal.[8]

*Attempted First Degree Robbery and Second Degree Assault*

¶11 Beaver contends his convictions for attempted first degree robbery and second degree assault violate double jeopardy under both the *Blockburger* test and the merger doctrine. In regards to the *Blockburger* test, he claims that given how the robbery and second degree assault charges were proved, the assault was the substantial step in the attempted robbery and thus proof of the attempted robbery necessarily proved the second degree assault.

¶12 Beaver relies heavily on the case *In re Personal Restraint of Orange*.[9] *Orange* involved the crimes of first degree attempted murder and first degree assault based on Christopher Orange's alleged shooting of the victim Marcel Walker. In that case, the court stated that when applying the *Blockburger* test to the attempted murder statute, the " 'substantial step' " element must be given a factual definition or "there is simply no way to assess whether attempted murder requires proof of a *fact* not required in proving the assault."[10] The court explained, " 'substantial step' is a placeholder in the attempt statute, having no

---

[6] *Freeman*, 153 Wn.2d at 771-73.

[7] *Freeman*, 153 Wn.2d at 770.

[8] *State v. Adel*, 136 Wn.2d 629, 631-32, 965 P.2d 1072 (1998).

[9] *Orange*, 152 Wn.2d 795.

[10] *Orange*, 152 Wn.2d at 818.

meaning with respect to any particular crime and acquiring meaning only from the facts of each case."[11]

¶13 Applying this rule, the *Orange* court determined from the record that the substantial step taken towards commission of first degree murder was Orange's act of shooting the bullet that hit Walker. The court apparently based this determination on the charging documents. Count II of the charging documents alleged that Orange committed the crime of first degree attempted murder by " 'act[ing] with premeditated intent to cause the death of another person and [attempting] to cause the death of Marcel Walker.' "[12] Count III alleged that Orange committed assault in the first degree when he, " '*at the same time as the crime charged in count II*, then and there, with intent to inflict great bodily harm upon another person, did intentionally assault Marcel Walker with a firearm' " and that Orange " 'used such force or means likely to result in death to or intended to kill Marcel Walker.' "[13]

¶14 Because the alleged crime of attempted murder took place " '*at the same time*' " as the alleged assault, the court apparently reasoned that the firing of the gun at Walker must be the substantial step Orange made towards commission of the crime of first degree murder. Having determined that the substantial step towards the commission of first degree murder was Orange's act of shooting at Walker, the court applied the *Blockburger* test and concluded:

> the crimes of first degree attempted murder (by taking the "substantial step" of shooting at Walker) and first degree assault (committed with a firearm) were the same in fact and in law. The two crimes were based on the same shot directed at the same victim, and the evidence required to support the

---

[11] *Orange*, 152 Wn.2d at 818.

[12] *Orange*, 152 Wn.2d at 814 (quoting Opening Br. of Pet'r, App. A (Second Am. Information) at 1-2).

[13] *Orange*, 152 Wn.2d at 814-15 (quoting Opening Br. of Pet'r, App. A (Second Am. Information) at 2).

conviction for first degree attempted murder was sufficient to convict Orange of first degree assault.[14]

In other words, because the State was required to prove that Orange fired the single gunshot at issue in order to prove Orange took a substantial step toward committing first degree attempted murder, the evidence required to prove Orange committed first degree attempted murder would have been sufficient to support a conviction for first degree assault. Therefore, the *Orange* court determined the two convictions violated the constitutional prohibition against double jeopardy.[15]

¶15 In the case at bar, it is not clear what specific event or combination of events constituted the substantial step taken by Beaver toward the commission of first degree robbery. Beaver offers that the assault was the substantial step, thus making proof of the assault a required element of the robbery charge. However, the elements of attempted robbery, including the substantial step element, were alleged only generically in the charging document, and the trial court concluded only that Beaver had taken a substantial step toward commission of the robbery, without stating what the step was. Therefore, unlike *Orange*, it is not clear from this record that Beaver's assault of Ayco was the substantial step required to be proven by the State in order to prove Beaver committed attempted first degree robbery.

¶16 Importantly, for purposes of proving attempted first degree robbery in this specific case, Beaver's assault of Ayco did not necessarily constitute the substantial step taken in furtherance of the robbery. A " 'substantial step' " for purposes of the criminal attempt statute is defined as conduct that is strongly corroborative of the actor's criminal purpose.[16] Based on what was proven at trial, a number of actions taken by Beaver would have constituted

---

[14] *Orange*, 152 Wn.2d at 820.

[15] *Orange*, 152 Wn.2d at 822.

[16] *State v. Cook*, 69 Wn. App. 412, 415, 848 P.2d 1325 (1993) (quoting *State v. Workman*, 90 Wn.2d 443, 451, 584 P.2d 382 (1978)).

a substantial step toward committing first degree robbery. As Beaver concedes, "Beaver and . . . Esparza could have been found guilty of attempted first degree robbery merely by virtue of the fact they entered the store wielding guns . . . ." Therefore, Beaver's entry into the store wielding a gun and announcing the robbery (conduct proven at trial and recited in the trial court's findings of fact) strongly corroborated his criminal purpose to commit first degree robbery and constituted evidence sufficient to prove attempted robbery in the first degree.

¶17 In sum, in *Orange* it was clear from the record that conduct amounting to first degree assault was the substantial step taken toward the attempted crime of first degree murder. Here, it is not clear that the assault was the substantial step taken toward the attempted crime of first degree robbery. Furthermore, there was other conduct proved at trial that did not constitute assault that would be sufficient to establish that Beaver took a substantial step toward the commission of first degree robbery. Therefore, we find that double jeopardy was not violated because under the facts of this case, it was not *required* for the State to prove facts sufficient to convict Beaver of second degree assault in order for it to prove Beaver committed the offense of first degree attempted robbery. This conclusion is not based on an abstract analysis of the statutory elements of the generic offenses but is established by the trial court's findings of fact that show the State proved facts at trial sufficient to establish attempted first degree robbery that would not sustain a conviction for second degree assault.

¶18 Beaver also claims that his convictions for attempted first degree robbery and second degree assault are prohibited under the merger doctrine. Beaver's claim is correct only if Beaver's conviction for attempted first degree robbery (as opposed to attempted second degree robbery) was necessarily predicated on the State proving Beaver committed the second degree assault. As the Washington Supreme Court recently reiterated in *State v. Freeman*:

"[T]he merger doctrine is a rule of statutory construction which only applies where the [l]egislature has clearly indicated that in order to prove a particular degree of crime (*e.g.*, first degree rape) the State *must* prove not only that a defendant committed that crime (*e.g.*, rape) but that the crime was accompanied by an act which is defined as a crime elsewhere in the criminal statutes (*e.g.*, assault or kidnapping)."[17]

¶19 Beaver relies on *Freeman* in support of his claim. In the companion case consolidated under *Freeman*, *State v. Zumwalt*, Zumwalt was convicted of first degree robbery and second degree assault for punching a woman in the face hard with his fist and then robbing her of $300 in cash and casino chips. In applying the merger doctrine to the facts of the case, the *Freeman* court concluded that "to prove first degree robbery as charged and proved by the State, the State had to prove the defendants committed an assault in furtherance of the robbery."[18]

¶20 Given the facts of the *Zumwalt* case and the way the first degree robbery statute was written, this only makes sense. According to the statutes applicable in *Zumwalt*, robbery may be elevated to first degree robbery by one of three ways. These three methods include, if the defendant in the commission of a robbery or immediate flight therefrom: "[i]s armed with a deadly weapon," "[d]isplays what appears to be a firearm or other deadly weapon," or "[i]nflicts bodily injury."[19] Under the facts of *Zumwalt*, the defendant was not armed with a deadly weapon or displaying what appeared to be a firearm or other deadly weapon. As charged and proved, Zumwalt was guilty of first degree robbery because he inflicted bodily injury (assaulted the victim) in furtherance of the robbery. In short, under the facts of the case, the State was required to prove that Zumwalt engaged in conduct amounting to second degree

---

[17] *Freeman*, 153 Wn.2d at 777-78 (emphasis added) (first alteration in original) (quoting *Vladovic*, 99 Wn.2d at 420-21).

[18] *Freeman*, 153 Wn.2d at 778.

[19] Former RCW 9A.56.200(1)(a)-(c) (2000), *recodified as* RCW 9A.56.200(1)(a)(i)--(iii) (Laws of 2002, ch. 85, § 1).

assault in order to elevate his robbery conviction to first degree robbery.

¶21 In contrast, in the case at bar, the State was not required to prove Beaver committed the crime of second degree assault in order to elevate the attempted robbery to attempted first degree robbery. Because the robbery involved that alleged use of a firearm, the State only had to prove that Beaver was armed with a deadly weapon or displayed what appeared to be a firearm or other deadly weapon. Here, it was charged and proved that Beaver was armed with a deadly weapon, therefore elevating the attempted robbery to first degree attempted robbery.[20] Since it was unnecessary under the facts of this case for the State to prove that Beaver engaged in conduct amounting to second degree assault in order to elevate his robbery conviction and because the State did prove conduct not amounting to second degree assault that elevated Beaver's attempted robbery conviction, the merger doctrine does not prohibit Beaver's conviction for both attempted first degree robbery and second degree assault.

*Attempted First Degree Robbery and First Degree Assault*

¶22 *Freeman* holds, "the legislature specifically did not intend that first degree assault merge into first degree robbery" because of "the hard fact that the sentence for the putatively lesser crime of assault is significantly greater than the sentence for the putatively greater crime of robbery."[21] The facts of this case are even more compelling given the fact that the sentencing disparity between the crime of *attempted* first degree robbery and first degree assault is even more pronounced. Beaver urges this court to overturn clear and recent precedent from the Washington Supreme Court; we decline the invitation.

---

[20] The trial court specifically found in its conclusion of law "[t]hat in [the] commission of the acts Jamar Beaver and his accomplice were armed with a [sic] firearms."

[21] *Freeman*, 153 Wn.2d at 778.

*Firearms Enhancements*

■ ¶23 Washington courts have consistently held that firearms enhancements imposed under former and current versions of the deadly weapon enhancement statute do not violate a defendant's double jeopardy rights where possession or use of a firearm is an element of the underlying offense because the legislature has clearly indicated its intent in the statute that the enhancements shall apply.[22] Beaver argues that this clear precedent should be reconsidered in light of *Blakely v. Washington*.[23] *Blakely* did not involve double jeopardy and tells us nothing about the legislative intent behind the firearms statute, and it is the legislature's intent in defining crimes and proscribing punishment that is the central issue in this double jeopardy challenge. Therefore, we reject Beaver's challenge.

■ ¶24 Finally, Beaver argues that the multiple enhancements imposed by the court for the use of a single firearm in both the second degree assault and the attempted first degree robbery violate double jeopardy. This court has entertained this argument before on several occasions, and it has been soundly rejected.[24] We again reject it here.

¶25 For the above reasons, the judgment and sentence are affirmed.

APPELWICK, C.J., and ELLINGTON, J., concur.

Review denied at 161 Wn.2d 1004 (2007).

---

[22] *See State v. Caldwell*, 47 Wn. App. 317, 320, 734 P.2d 542, *review denied*, 108 Wn.2d 1018 (1987); *State v. Pentland*, 43 Wn. App. 808, 811-12, 719 P.2d 605, *review denied*, 106 Wn.2d 1016 (1986).

[23] *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

[24] *See State v. Huested*, 118 Wn. App. 92, 95, 74 P.3d 672 (2003) (holding that former RCW 9.94A.510(4) "unambiguously shows legislative intent to impose two enhancements based on a single act of possessing a weapon, where there are two offenses eligible for an enhancement").