# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | DIVISION ONE |
| Respondent, | ) | |
| | ) | No. 69754-4-I |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| RAVIS L. DUNN, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 21, 2014 |
| | ) | |

2014 APR 21 AM 10: 20

COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

DWYER, J. — Ravis Dunn and Rachelle Lawson lured Shannan Cassidy

out of a house and down to a vehicle with the promise of selling him a sports

jersey. Dunn then pulled out a pistol, brandished it at Cassidy, and said, "you

know what this is, nigga." Thinking that he was being robbed, Cassidy gave

Dunn his wallet. When Dunn began to check Cassidy's pockets, Cassidy pushed

the gun away and the two "tussled." After disentangling himself, Dunn stepped

back and shot Cassidy in the hip.

The State charged Dunn with robbery in the first degree and assault in the

second degree. With respect to the assault charge, the jury was instructed that it

could only convict on that charge if it found that an actual battery had been

committed. The jury convicted Dunn on both charges. On appeal, Dunn

contends that his assault conviction elevated the robbery to robbery in the first

degree, which should cause his assault conviction to merge into his robbery

conviction. He also contends that his right to a trial by a fair and impartial jury was violated. In affirming Dunn's convictions, we conclude that each offense required proof of a fact not necessary to convict Dunn of the other offense, and that the assault conviction, as charged and consistent with the jury's instructions, did not elevate the robbery to robbery in the first degree. Further, we conclude that Dunn's right to a fair and impartial jury was not violated. Accordingly, we affirm.

I

On July 16, 2011, Dunn encountered Rachelle Lawson, a friend he had known for a number of years, at a bar. Lawson had argued with her boyfriend earlier. Because she did not want to go home to see him, she left the bar with Dunn in her boyfriend's Ford Bronco. The two drove to a home in West Seattle. At the home were some of Dunn's friends, including Rebekah Gonzales,[1] Nicole Parke, and Kim Wilbur. Also present was Parke's friend, Shannan[2] Cassidy. After socializing with Dunn's friends, Lawson and Dunn left the house around 4:00 a.m. Before Lawson and Dunn left the house, however, Cassidy had discussed sports jerseys while Dunn was present.

The following afternoon, Lawson and Dunn returned to the same home in West Seattle in the Ford Bronco. At some point that afternoon, Cassidy—who was still present at the West Seattle home when Lawson and Dunn returned—left the house to look at sports jerseys stored in the Bronco. Although there was

_____

[1] Now Rebekah MacMaster.
[2] There is a claimed confusion over the spelling of Cassidy's first name. At trial, Cassidy spelled his first name "Shannan." Accordingly, so will we.

conflicting testimony as to who asked Cassidy to look at the jerseys and as to who walked out to the Bronco with him, all accounts confirm that Cassidy left the house to look at the jerseys. Lawson testified that the jerseys had been gifts she had given to her boyfriend, which she had taken back following their argument.

Once Cassidy walked outside and approached the Bronco, Dunn produced a pistol, which he pointed at Cassidy's head, stating, "You know what this is, nigga." Cassidy thought that he was being robbed. In response, Cassidy pulled his wallet out of his pocket and handed it to Dunn. After Cassidy handed his wallet to Dunn, Dunn checked Cassidy's pockets for other valuables. Dunn felt Cassidy's checkbook in one of Cassidy's back pockets and tried to remove it, at which point the two started "tussling over the gun." Once Dunn managed to disentangle himself from Cassidy, Dunn stepped back and shot Cassidy in the hip. After Dunn shot Cassidy, Dunn, Lawson, and another man named Quayvis,[3] got in the Bronco and drove away.

The State charged Dunn with robbery in the first degree, assault in the second degree, and unlawful possession of a firearm in the first degree. The robbery and assault charges included the allegation that Dunn committed the offenses while armed with a firearm. Lawson was initially charged with rendering criminal assistance in the first degree. Later, she pleaded guilty to a reduced charge and agreed to testify against Dunn. The information was then amended to eliminate mention of Lawson's charge from Dunn's charging document.

---

[3] Passersby corroborated Lawson's testimony that another man was present but apparently uninvolved with the robbery. They all testified that he was farther down the street, apparently urinating. None of the occupants of the house, including Cassidy, ever saw Quayvis.

The case was tried to a jury. On August 8, 2012 at 1:30 p.m., after deliberating for more than eight hours over the course of two days, the jury sent a note to the court, stating, "we have reviewed the evidence no one feels the need to review further we are unable to reach a unanimouse [sic] verdict on any count." The trial court then brought the jury into the courtroom and asked the presiding juror, "Is there a reasonable probability of the jury reaching a unanimous verdict within a reasonable time[?]" The presiding juror responded, "No." The court then asked, "Is there any member of the jury that disagrees with that statement. If so, please raise your hand." One of the jurors raised her hand. The court then released the jurors for the day, instructing them to return the next day to continue deliberations.

The following morning, one of the jurors was ill. The trial court excused the remaining jurors until the afternoon. In the afternoon, the entire jury, including the ill juror, resumed deliberations and ultimately returned verdicts of guilty as charged on all counts, concluding additionally that Dunn was armed with a firearm during the commission of the robbery and the assault.

At sentencing, Dunn asserted that the convictions for robbery in the first degree and assault in the second degree should merge, and that the trial court should therefore vacate the conviction for assault in the second degree. The trial court rejected Dunn's assertion and imposed a sentence of 225 months in prison.

Dunn appeals from the judgment and sentence.

II

Dunn claims that he should not have been convicted of both robbery in the

first degree and assault in the second degree. This requires us to address several issues. The first issue is whether the legislature has, either expressly or implicitly, evinced an intent to punish separately the offenses of assault in the second degree and robbery in the first degree. The next question, which requires us to apply the Blockburger[4] test, is whether each offense contains an element that the other does not. The final issue is whether, in order for the jury to convict the defendant of robbery in the first degree, it was *necessary* for the jury to convict the defendant of assault in the second degree.

The double jeopardy clauses of our state and federal constitutions protect against multiple punishments for the same offense.[5] WASH. CONST. art. I, § 9; U.S. CONST. amend. 5; State v. Calle, 125 Wn.2d 769, 772, 888 P.2d 155 (1995). Although the State may bring multiple charges arising from the same criminal conduct, "'[w]here a defendant's act supports charges under two criminal statutes, a court weighing a double jeopardy challenge must determine whether, in light of legislative intent, the charged crimes constitute the same offense.'" State v. Freeman, 153 Wn.2d 765, 771, 108 P.3d 753 (2005) (quoting In re Pers. Restraint of Orange, 152 Wn.2d 795, 815, 100 P.3d 291 (2004)). "If the legislature authorized cumulative punishments for both crimes, then double jeopardy is not offended." Freeman, 153 Wn.2d at 771.

Recently, in State v. Esparza, 135 Wn. App. 54, 143 P.3d 612 (2006), we

---

[4] Blockburger v. United States, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932).
[5] The Washington double jeopardy provision, WASH. CONST. art. I, § 9, is coextensive with the Fifth Amendment as interpreted by the United States Supreme Court. State v. Gocken, 127 Wn.2d 95, 107, 896 P.2d 1267 (1995). Claims of double jeopardy are reviewed de novo. State v. Freeman, 153 Wn.2d 765, 770, 108 P.3d 753 (2005).

reiterated our approach to resolving double jeopardy issues, as elucidated by our

Supreme Court in Freeman.

> "Because the question largely turns on what the legislature intended, we first consider any express or implicit legislative intent. Sometimes the legislative intent is clear, as when it explicitly provides that burglary shall be punished separately from any related crime. RCW 9A.52.050. Sometimes, there is sufficient evidence of legislative intent that we are confident concluding that the legislature intended to punish two offenses arising out of the eparately without more analysis. E.g., [State v.] Calle, 125 Wn.2d [769,] 777-78[, 888 P.2d 155 (1995)] (rape and incest are separate offenses).
> Second, if the legislative intent is not clear, we may turn to the Blockburger test. See Calle, 125 Wn.2d at 777-78, 888 P.2d 155; Blockburger v. United States, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). If each crime contains an element that the other does not, we presume that the crimes are not the same offense for double jeopardy purposes. Calle, 125 Wn.2d at 777; Blockburger, 284 U.S. at 304 (establishing "same evidence" or "same elements" test); State v. Reiff, 14 Wash. 664, 667, 45 P. 318 (1896) (double jeopardy violated when "'the evidence required to support a conviction [of one crime] would have been sufficient to warrant a conviction upon the other'") (quoting Morey v. Commonwealth, 108 Mass. 433, 434 (1871)).
> When applying the Blockburger test, we do not consider the elements of the crime on an abstract level. "'[W]here *the same act or transaction* constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision *requires proof of a fact* which the other does not.'" [In re Personal Restraint of] Orange, 152 Wn.2d [795,] 817[, 100 P.3d 291 (2004)] (quoting Blockburger, 284 U.S. at 304 (citing Gavieres v. United States, 220 U.S. 338, 342, 31 S. Ct. 421, 55 L. Ed. 489 (1911))). However, the Blockburger presumption may be rebutted by other evidence of legislative intent. Calle, 125 Wn.2d at 778.
> Third, if applicable, the merger doctrine is another aid in determining legislative intent, even when two crimes have formally different elements. Under the merger doctrine, when the degree of one offense is raised by conduct separately criminalized by the legislature, we presume the legislature intended to punish both offenses through a greater sentence for the greater crime. [State v. Vladovic, 99 Wn.2d [413,] 419[, 662 P.2d 853 (1983)].
> Finally, even if on an abstract level two convictions appear to

> be for the same offense or for charges that would merge, if there is an independent purpose or effect to each, they may be punished as separate offenses. State v. Frohs, 83 Wn. App. 803, 807, 924 P.2d 384 (1996) (citing State v. Johnson, 92 Wn.2d 671, 680, 600 P.2d 1249 (1979))."

Esparza, 135 Wn. App. at 59-61 (quoting Freeman, 153 Wn.2d at 771-73).

A

Neither the statute for robbery in the first degree nor the statute for assault in the second degree explicitly addresses whether separate punishments may be imposed for each offense. Compare RCW 9A.56.200 (robbery in the first degree), with RCW 9A.36.021 (assault in the second degree). Moreover, neither party directs our attention to any other source of explicit or implicit legislative intent on this issue. Cf. Freeman, 153 Wn.2d at 776 (with respect to robbery in the first degree and assault in the second degree, no such evidence of legislative intent). Therefore, we must next apply the Blockburger test.

B

Application of the Blockburger test indicates that the offenses for which Dunn was convicted are not the same for constitutional double jeopardy purposes. "Under Blockburger, 'where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.'" State v. Nysta, 168 Wn. App. 30, 45, 275 P.3d 1162 (2012) (quoting Blockburger, 284 U.S. at 304), review denied, 177 Wn.2d 1008 (2013). "'If there is an element in each offense which is not included in the other, and proof of one offense would not necessarily also prove the other,

the offenses are not constitutionally the same and the double jeopardy clause does not prevent convictions for both offenses.'" Nysta, 168 Wn. at 46 (quoting Vladovic, 99 Wn.2d at 423). Accordingly, "it is not enough merely to 'compare the statutory elements at their most abstract level,'" "[w]e are to consider the elements of the crimes both as charged and as proved." Nysta, 168 Wn. App. at 47 (quoting Orange, 152 Wn.2d at 818).

Dunn was charged with and convicted of robbery in the first degree and assault in the second degree. To establish robbery in the first degree, as the jury was instructed, required the jury to find that Dunn took property from Cassidy.[6] To establish assault in the second degree, however, did not require the jury to find that Dunn took property from Cassidy.[7] What assault in the second degree did require, as the jury was instructed, was for the jury to find that Dunn shot Cassidy.[8] Yet, robbery in the first degree did not require the jury to find that

---

[6] The jury was instructed, in pertinent part, as follows:
    To convict the defendant of the crime of robbery in the first degree, as charged in count I, each of the following six elements of the crime must be proved beyond a reasonable doubt:
    (1) That on or about the 16th of July 2011, the defendant unlawfully took personal property from the person of another.
Jury Instruction 6.

[7] The jury was instructed, in pertinent part, as follows:
    To convict the defendant of the crime of assault in the second degree, as charged in Count II, each of the following two elements of the crime must be proved beyond a reasonable doubt:
    (1) That on or about the 16th of Jury, 2011, the defendant:
        (a) intentionally assaulted Shanon Cassidy and thereby recklessly inflicted substantial bodily harm; or
        (b) assaulted Shanon Cassidy with a deadly weapon; and
    (2) That this act occurred in the State of Washington.
Jury Instruction 16.

[8] The jury was instructed, in pertinent part, as follows:
    An assault is an intentional touching or striking or shooting of another person, with unlawful force, that is harmful or offensive regardless of whether any physical injury is done to the person. A touching or striking or shooting is

- 8 -

Dunn shot Cassidy.[9] Whether comparing the statutory elements of each offense or examining the facts used to prove them, it is clear that each offense required the jury to find an additional element—as well as the facts supporting each element—that the other did not. Accordingly, we presume that the offenses for which Dunn was convicted are not the same for constitutional double jeopardy purposes. Calle, 125 Wn.2d at 778.

The result of the Blockburger test we reach here "creates a rebuttable presumption that the offenses are not the same." In re Pers. Restraint of Francis, 170 Wn.2d 517, 524 n.4, 242 P.3d 866 (2010). Yet, "the merger doctrine can rebut this presumption." Francis, 170 Wn.2d at 524 n.4.

C

In this case, however, application of the merger doctrine does not rebut the presumption that the offenses are not the same. Our Supreme Court has explained that the merger doctrine is an additional means of ascertaining legislative intent with respect to whether separate punishments are authorized.

> We reaffirm our holdings that the merger doctrine is a rule of statutory construction which only applies where the Legislature has clearly indicated that in order to prove a particular degree of crime (e.g., first degree rape) the State must prove not only that a defendant committed that crime (e.g., rape) but that the crime was accompanied by an act which is defined as a crime elsewhere in the criminal statutes (e.g., assault or kidnapping).

---

offensive if the touching or striking or shooting would offend an ordinary person who is not unduly sensitive.
Jury Instruction 17.

[9] The jury was instructed, in pertinent part, as follows:
A person commits the crime of robbery in the first degree when in the commission of a robbery he or she is armed with a deadly weapon or displays what appears to be a firearm or other deadly weapon.
Jury Instruction 8.

Vladovic, 99 Wn.2d at 420-21. Importantly, application of the merger doctrine is informed by the evidence of facts that the jury is required to find in order to convict. See State v. Kier, 164 Wn.2d 798, 806, 194 P.3d 212 (2008); Freeman, 153 Wn.2d at 778. Although Washington courts have previously held that convictions for robbery in the first degree and assault in the second degree merge, those cases are distinguishable from the facts of this case in that, in order for the jury in those cases to convict the defendants of robbery in the first degree, it was *necessary* for the jury to convict the defendants of assault in the second degree. See Kier, 164 Wn.2d at 806; Freeman, 153 Wn.2d at 778.

Here, it was *not* necessary for the jury first to convict Dunn of assault in the second degree in order to convict him of robbery in the first degree. This is so because the jury was instructed that the assault charge was predicated only on an *actual battery*.[10] To convict Dunn of robbery in the first degree, however, the jury did not need to find that an actual battery occurred—it only had to find that Dunn was armed with or displayed a deadly weapon.[11] Thus, the State's proof of robbery in the first degree was complete upon the introduction of evidence that Dunn had wielded a firearm and taken Cassidy's wallet. This evidence, however, as the jury was instructed, did not establish that Dunn had committed assault in the second degree. The facts that led the jury to convict

---

[10] "An assault is an intentional touching or striking or shooting of another person." Jury Instruction 17.
[11] The jury was instructed, in pertinent part, as follows: "A person commits the crime of robbery in the first degree when in the commission of a robbery he or she is armed with a deadly weapon or displays what appears to be a firearm or other deadly weapon." Jury Instruction 8.

Dunn of assault in the second degree were not *necessary* to convict him of robbery in the first degree. Thus, the facts necessary to the assault in the second degree charge did not elevate the robbery to robbery in the first degree.

Esparza reinforces our analysis. In Esparza, we declined to merge an attempted robbery in the first degree charge and an assault in the second degree charge after the defendant tried to rob a jewelry store.[12] 135 Wn. App. at 57-58. In concluding that there was no double jeopardy violation, we noted that the State had to prove only that the defendant was armed with or displayed a deadly weapon in order to prove the attempted robbery in the first degree. Esparza, 135 Wn. App. at 66. We then held that,

> [s]ince it was unnecessary under the facts of this case for the State to prove that [the defendant] engaged in conduct amounting to second degree assault in order to elevate his robbery conviction and because the State did prove conduct not amounting to second degree assault that elevated [the defendant's] attempted robbery conviction, the merger doctrine does not prohibit [the defendant's] conviction for both attempted first degree robbery and second degree assault.

Esparza, 135 Wn. App. at 66. Just as in Esparza, here, the jury was not required to find that Dunn committed assault in the second degree in order to elevate the robbery to robbery in the first degree.[13] Accordingly, the offenses do not merge.[14] We are satisfied that Dunn's convictions do not violate the prohibition

---

[12] Although Esparza involved attempted robbery in the first degree, its reasoning applies with equal force to the facts here.

[13] However, as instructed, to convict Dunn of assault in the second degree, the jury *was* required to find an actual battery—by shooting—of Cassidy. This was *not* necessary to convict Dunn of robbery in the first degree.

[14] Because neither the Blockburger test nor a merger analysis indicates that the two convictions constitute double jeopardy, we need not consider whether there was "an independent purpose . . . to each." Freeman, 153 Wn.2d at 773.

on double jeopardy.

III

Dunn next contends that his right to a trial by a fair and impartial jury was violated. This is so, he avers, because the trial court coerced the jury into reaching a guilty verdict. His contention is unavailing.

A criminal defendant has a right to a trial before an impartial jury. U.S. CONST. amend. VI; WASH. CONST. art. I §§ 21, 22. "The right to a jury trial includes the right to have each juror reach his or her own verdict 'uninfluenced by factors outside the evidence, the court's proper instructions, and the arguments of counsel.'" State v. Goldberg, 149 Wn.2d 888, 892-93, 72 P.3d 1083 (2003) (quoting State v. Boogaard, 90 Wn.2d 733, 736, 585 P.2d 789 (1978)), overruled on other grounds by State v. Nunez, 174 Wn.2d 707, 285 P.3d 21 (2012). It follows that a trial court may not coerce a jury to reach a verdict. State v. Jones, 97 Wn.2d 159, 163-65, 641 P.2d 708 (1982); Boogaard, 90 Wn.2d at 736-37. Criminal Rule (CrR) 6.15 guards against the specter of coercion by prohibiting the trial court from instructing the jury, once deliberations have commenced, "in such a way as to suggest the need for agreement, the consequences of no agreement, or the length of time a jury will be required to deliberate." CrR 6.15(f)(2).

"To prevail on a claim of improper judicial interference with the verdict, a defendant 'must establish a reasonably substantial possibility that the verdict was improperly influenced by the trial court's intervention.'" State v. Ford, 171 Wn.2d 185, 188-89, 250 P.3d 97 (2011) (quoting State v. Watkins, 99 Wn.2d 166, 178,

- 12 -

660 P.2d 1117 (1983)).

> Judicial coercion must include an instance of actual conduct by the trial judge during jury deliberations that could influence the jury's decision. To make such a claim, a defendant must first make a threshold showing that the jury was still within its deliberative process. Second, though related, the defendant must affirmatively show that the jury was at that point still undecided. Third, the defendant must show judicial action designed to force or compel a decision, and fourth, the impropriety of that conduct.

Ford, 171 Wn.2d at 193.

A criminal defendant has a right to have his case completed by the particular jury impaneled and sworn to try his cause. Jones, 97 Wn.2d at 162-63. If a court discharges a jury without the defendant's consent, double jeopardy principles will bar retrial unless the "'*discharge was necessary in the interest of the proper administration of public justice.*'" Jones, 97 Wn.2d at 162-63 (quoting State v. Connors, 59 Wn.2d 879, 883, 371 P.2d 541 (1962)). A deadlocked jury constitutes a manifest necessity permitting the trial court to discharge the jury and declare a mistrial. State ex rel. Charles v. Bellingham Mun. Court, 26 Wn. App. 144, 147-48, 612 P.2d 427 (1980) (citing Connors, 59 Wn.2d at 883).

"[W]e review the trial court's determination of whether a deadlock exists with great deference." State v. Taylor, 109 Wn.2d 438, 443, 745 P.2d 510 (1987), disapproved of on other grounds by State v. Labanowski, 117 Wn.2d 405, 816 P.2d 26 (1991). "A trial judge has broad discretion in deciding a jury is permanently divided," the reason for which "is that he or she is in the best position to determine whether a jury's stalemate is only a temporary step in the deliberation process or the unalterable conclusion to that process." Taylor, 109

- 13 -

Wn.2d at 442.

> The principal factor to be considered in assessing whether a nonunamimous jury is genuinely deadlocked is "the length of time the jury had been deliberating in light of the length of the trial and the volume and complexity of the evidence." Jones, at 164; State v. Boogaard, 90 Wn.2d 733, 739, 585 P.2d 789 (1978). The judge also may consider any progress in the deliberations. Jones, at 164. The jury's own assessment that it is deadlocked, while helpful, is not itself sufficient ground for declaring a mistrial. See United States v. Ross, 626 F.2d 77, 81 (9th Cir. 1980). The decision to discharge the jury should be made only when it "appears to the trial judge that there is no reasonable probability of the jury arriving at an agreement even if given more time." State ex rel. Charles v. Bellingham Mun. Court, 26 Wn. App. 144, 148, 612 P.2d 427 (1980).

Taylor, 109 Wn.2d at 443.

Dunn contends that the trial court violated CrR 6.15(f)(2). We disagree.

The trial court asked the presiding juror, "Is there a reasonable probability of the jury reaching a unanimous verdict within a reasonable time[?]" The presiding juror responded, "No." The court then asked, "Is there any member of the jury that disagrees with that statement. If so, please raise your hand." One of the jurors raised her hand.

These questions did not "suggest the need for agreement, the consequences of no agreement, or the length of time a jury will be required to deliberate." CrR 6.15(f)(2). Moreover, they were not designed to "force or compel a decision." Ford, 171 Wn.2d at 193. Instead, they were neutral questions calculated to determine whether the jury considered itself to be deadlocked. The trial court did not violate the rule.

Moreover, the trial court did not abuse its discretion by concluding that the

jury was not deadlocked.

The fact that the jurors were in disagreement as to whether they were deadlocked supports the trial court's decision to allow for additional deliberations. There was no abuse of discretion in so deciding.

Similarly, the trial court did not err by requiring the jury to wait for the ill juror to recover sufficiently so as to be able to resume deliberating. A half-day period of repose is hardly an unknown phenomenon in jury trials. The trial judge acted wisely in keeping the jury together in order for the ill juror to have sufficient time to recover and complete the juror's service. There was no abuse of discretion in affording the ill juror that opportunity. Similarly, there was no abuse of discretion in preserving to Dunn his right to a decision at trial on the first occasion on which he was put in constitutional jeopardy.[15]

Affirmed.

We concur:

---

[15] In his statement of additional grounds for review, Dunn contends that the trial court erred by not finding that the jury was deadlocked and thereby coerced the jury to reach a verdict. In view of our analysis above, we reject his contention.