IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| Respondent, | ) ) | No. 76744-5-I |
| v. | ) ) | UNPUBLISHED OPINION |
| FRANCISCO GUZMAN RODRIGUEZ, | ) ) | |
| Appellant. | ) ) | FILED: July 31, 2017 |
| | ) | |

DWYER, J. — Francisco Guzman Rodriguez appeals from the judgment entered on a jury's verdicts finding him guilty of one count of assault in the first degree and one count of attempted murder in the second degree. On appeal, Guzman Rodriguez contends that, by entering judgment on the jury's verdicts, the trial court deprived him of his right against double jeopardy. This is so, he asserts, because the crimes for which he was convicted constituted the same offense.

We conclude that, because the State proved each crime with different evidence, the two crimes were not the same in fact for double jeopardy purposes. Accordingly, we affirm.

I

Guzman Rodriguez and Leonila Mejia Albino had been in a romantic relationship and were in the process of separation. They continued to live

together but Mejia Albino had informed Guzman Rodriguez that she intended to find another place to live with her children.

On the day in question, in the very early morning, Mejia Albino awoke to find Guzman Rodriguez on her bed kneeling over her with a scarf in his hands. Guzman Rodriguez told her that she was not going to leave and that he had to kill her. He wrapped the scarf once around her neck.

Guzman Rodriguez then pulled the loose ends of the scarf tight against her neck. Pain began to build in Mejia Albino's head. She pushed him off of the bed and they fell to the floor.

When they stood up, Guzman Rodriguez placed his hands around Mejia Albino's neck and squeezed with his fingers. Mejia Albino tried to push him away, feeling that she could not breathe. She lost consciousness for a time.

Upon regaining her awareness, Mejia Albino found herself holding onto a table. She fled into a bathroom and locked the door behind her.

The State, upon amended information, charged Guzman Rodriguez with one count of attempted murder in the first degree, pursuant to RCW 9A.28.020(1), 9A.32.030(1)(a), and one count of assault in the first degree, pursuant to RCW 9A.36.011(1)(a).

At trial, after the testimony had concluded, the trial court instructed the jury as to the crimes of assault in the first degree, attempted murder in the first degree, and attempted murder in the second degree. The jury returned verdicts finding Guzman Rodriguez guilty of assault in the first degree and attempted

murder in the second degree. The trial court entered judgment on the verdicts and imposed sentence.

Guzman Rodriguez now appeals.

## II

Guzman Rodriguez argues that entering judgment on the convictions for attempted murder in the second degree and assault in the first degree violated his right against double jeopardy. He is incorrect.

## A

"Article I, section 9 of the Washington Constitution, the double jeopardy clause, guarantees that, '[n]o person shall . . . be twice put in jeopardy for the same offense.' It mirrors the protections offered by the federal constitutional protection against double jeopardy." State v. Villanueva-Gonzalez, 175 Wn. App. 1, 4-5, 304 P.3d 906 (2013) (alterations in original) (citing State v. Gocken, 127 Wn.2d 95, 107, 896 P.2d 1267 (1995)), aff'd, 180 Wn.2d 975, 329 P.3d 78 (2014). "The double jeopardy clauses of the Fifth Amendment and Const. art. I, § 9 protect a defendant against multiple punishments for the same offense." State v. Calle, 125 Wn.2d 769, 772, 888 P.2d 155 (1995).

> [T]he question whether punishments imposed by a court, following conviction upon criminal charges, are unconstitutionally multiple cannot be resolved without determining what punishments the legislative branch has authorized. Whalen[ v. United States, 445 U.S. 684,] 688, [100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980)]. Our review here is limited to assuring that the court did not exceed its legislative authority by imposing multiple punishments for the same offense.

Calle, 125 Wn.2d at 776.

For the first time on appeal, Guzman Rodriguez contends that he is exposed to multiple punishments as a result of having the convictions of attempted murder in the second degree (of Mejia Albino) and assault in the first degree (of Mejia Albino) reduced to judgment with sentences for each imposed upon him.

Although the State may bring multiple charges arising from the same criminal conduct, "'[w]here a defendant's act supports charges under two criminal statutes, a court weighing a double jeopardy challenge must determine whether, in light of legislative intent, the charged crimes constitute the same offense.'" State v. Freeman, 153 Wn.2d 765, 771, 108 P.3d 753 (2005) (quoting In re Pers. Restraint of Orange, 152 Wn.2d 795, 815, 100 P.3d 291 (2004)). "If the legislature authorized cumulative punishments for both crimes, then double jeopardy is not offended." Freeman, 153 Wn.2d at 771.

Our Supreme Court has adopted a four-part inquiry to determine if the legislature intended multiple punishments in a particular situation. Freeman, 153 Wn.2d at 771-73. First, we consider any express or implicit legislative intent based upon the criminal statutes involved. Freeman, 153 Wn.2d at 771-72.[1] If this intent is unclear, we may turn to the "same evidence" test set forth in Blockburger v. United States, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932), to assess whether the two offenses are the same in both fact and law. Freeman, 153 Wn.2d at 771-72. "'If each crime contains an element that the

---

[1] See, e.g., RCW 9A.52.050 (legislature explicitly provided that burglary shall be punished separately from any related crime); Calle, 125 Wn.2d at 777-78 (legislature implicitly intended rape and incest to be treated as separate offenses).

-4-

other does not, we presume that the crimes are not the same offense for double jeopardy purposes.'" State v. Esparza, 135 Wn. App. 54, 60, 143 P.3d 612 (2006) (quoting Freeman, 153 Wn.2d at 772).

"'[I]f applicable, the merger doctrine is another aid in determining legislative intent, even when two crimes have formally different elements. Under the merger doctrine, when the degree of one offense is raised by conduct separately criminalized by the legislature, we presume the legislature intended to punish both offenses as one crime through a greater sentence for the greater crime.'" Esparza, 135 Wn. App. at 60 (quoting Freeman, 153 Wn.2d at 772-73). Lastly, even if two convictions appear to merge on an abstract level under this test, they may be punished separately if an independent purpose or effect for each exists.[2] State v. Kier, 164 Wn.2d 798, 804, 194 P.3d 212 (2008).

"Where one of the two crimes is an attempt crime, the test requires further refinement." In re Pers. Restraint of Borrero, 161 Wn.2d 532, 537, 167 P.3d 1106 (2007). This is because, our Supreme Court has explained, one of the elements of an attempt crime is that the defendant "'does any act which is a substantial step toward the commission of that crime.'" Borrero, 161 Wn.2d at 537 (quoting former RCW 9A.28.020(1) (1975)). The "substantial step" element is merely a placeholder until the facts of the particular case give it independent

---

[2] As instructed by United States Supreme Court in United States v. Dixon, 509 U.S. 688, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993), it is not a proper double jeopardy analysis to engage in the "same conduct" test that was announced in Grady v. Corbin, 495 U.S. 508, 521, 110 S. Ct. 2084, 109 L. Ed. 2d 548 (1990), overruled by Dixon, 509 U.S. 688, overruling recognized by State v. Gocken, 127 Wn.2d 95, 101, 896 P.2d 1267 (1995). Thus, the "same conduct" test applies to neither a Fifth Amendment nor an article I, § 9 double jeopardy analysis. Gocken, 127 Wn.2d at 107.

meaning. Borrero, 161 Wn.2d at 537. "Only by examining the actual facts constituting the 'substantial step' can the determination be made that the defendant's double jeopardy rights have been violated." Borrero, 161 Wn.2d at 537.

However, the court explained, even where the same facts supporting the defendant's conviction for the separate offense could also constitute the substantial step of the attempt crime, double jeopardy is not violated when there are additional facts in the record that would also constitute the substantial step. Borrero, 161 Wn.2d at 538. The reviewing court should not presume "that the trier of fact relied on only the facts tending to prove both crimes." Borrero, 161 Wn.2d at 538. Instead, unless the facts providing the basis for the separate conviction are also necessary to prove the attempt crime, double jeopardy principles are not offended. Borrero, 161 Wn.2d at 538-39.

B

The criminal statutes at issue herein are attempted murder in the second degree and assault in the first degree. The criminal attempt statute reads, in relevant part, "A person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime." RCW 9A.28.020(1). The criminal statute for murder in the second degree reads, in relevant part, "A person is guilty of murder in the second degree when: (a) With intent to cause the death of another person but without premeditation, he or she causes the death of such person or of a third person." RCW 9A.32.050(1).

The statute setting forth the crime of assault in the first degree reads, in pertinent part, "A person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm:  (a) Assaults another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death."  RCW 9A.36.011(1).

1

We now turn to the first step of the double jeopardy analysis.  "Again, if the statutes explicitly authorize separate punishments, then separate convictions do not offend double jeopardy."  Freeman, 153 Wn.2d at 773.  "Evidence of legislative intent may be clear on the face of the statute, found in the legislative history, the structure of the statutes, the fact the two statutes are directed at eliminating different evils, or any other source of legislative intent."  Freeman, 153 Wn.2d at 773 (citing Ball v. United States, 470 U.S. 856, 864, 105 S. Ct. 1668, 84 L. Ed. 2d 740 (1985); Calle, 125 Wn.2d at 777-78).

The criminal attempt statute and the assault in the first degree statute do not explicitly approve of the imposition of multiple punishments.  However, we note that the two offenses serve different purposes and that the legislature placed these criminal statutes in different chapters of the criminal code.  Criminal attempt is set forth in chapter 9A.28 RCW, Anticipatory Offenses, whereas assault in the first degree is set forth in chapter 9A.36 RCW, Assault—Physical Harm.  In addition, the criminal statute underlying the attempt crime herein, RCW 9A.32.050(1), is set forth in chapter 9A.32 RCW, concerning acts of homicide.

The primary intent of chapter 9A.28 RCW is to punish those actions taken in anticipation of committing a crime, such as criminal solicitation, RCW 9A.28.030, criminal conspiracy, RCW 9A.28.040, and, pertinent here, criminal attempt, RCW 9A.28.020. The legislature's intent, when read in light of the murder crime attempted herein, would be to punish those actions taken in anticipation of committing an unlawful homicide. By contrast, the primary intent of chapter 9A.36 RCW is directed at punishing assaultive conduct that may result in physical harm, including assault, RCW 9A.36.011-.041, drive-by shooting, RCW 9A.36.045, and reckless endangerment, RCW 9A.36.050.

That the legislature penalized an act constituting a substantial step toward causing the death of another and an act of assault against another suggests that the legislature intended that the crimes be treated differently. Furthermore, it is conceivable that the legislature envisioned punishing both conduct that strongly corroborates a criminal purpose to commit murder, while stopping short of an assaultive act, and conduct amounting to commission of a physically assaultive act. Thus, the explicit and implicit legislative intent tends to suggest that the legislature envisioned that the two offenses be treated separately.

2

We next consider the Blockburger "same evidence" test. Freeman, 153 Wn.2d at 772. "If each crime contains an element that the other does not, we presume that the crimes are not the same offense for double jeopardy purposes." Freeman, 153 Wn.2d at 772.

i

As a preliminary matter, there are several indications that the aforementioned crimes are not the same offense for double jeopardy purposes. First, the statutory elements are not the same. Each criminal statute requires proof of a distinct mental state—attempted murder in the second degree requires that an actor intend to cause the death of another whereas assault in the first degree requires an intent to inflict great bodily harm. Indeed, proof of intent to inflict great bodily harm is not sufficient to prove intent to cause the death of another. Conceivably, a person could act with the intent to cause great bodily harm to another without also intending to kill such person.

In addition to setting forth distinct statutory elements, the criminal statutes require proof of distinct conduct. Assault in the first degree requires that an assaultive act be proved. However, unlike attempted murder in the second degree, the assault crime is not necessarily proved by an act constituting a substantial step taken toward causing the death of another. Indeed, it is conceivable that a person could engage in conduct strongly corroborative of a murderous purpose (such as approaching an unsuspecting victim with the means to commit murder in hand), and yet stop short of committing an assaultive act "likely to produce great bodily harm or death." RCW 9A.36.011(1)(a); see Esparza, 135 Wn. App. at 63. In this way, proof of the crime of assault in the first degree is not required in order to prove attempted murder in the second degree. See Esparza, 135 Wn. App. at 64. Thus, we presume that the crimes are not the same offense for double jeopardy purposes.

ii

We note, however, that when applying the <u>Blockburger</u> test, we do not consider the elements of the crimes at issue solely on an abstract level. Rather, "'where *the same act or transaction* constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision *requires proof of a fact* which the other does not.'" <u>Orange</u>, 152 Wn.2d at 817 (quoting <u>Blockburger</u>, 284 U.S. at 304 (citing <u>Gavieres v. United States</u>, 220 U.S. 338, 342, 31 S. Ct. 421, 55 L. Ed. 489 (1911))).

To convict Guzman Rodriguez of attempted murder in the second degree, the State was required to prove that Guzman Rodriguez, with the intent to cause the death of Mejia Albino, took a substantial step toward causing the death of Mejia Albino. RCW 9A.28.020(1); RCW 9A.32.050(1). A "'substantial step'" for purposes of the criminal attempt statute is defined as conduct that is strongly corroborative of the actor's criminal purpose. <u>Esparza</u>, 135 Wn. App. at 63. Conduct strongly corroborative of an actor's criminal purpose includes, "'lying in wait, searching for or following the contemplated victim of the crime,'" and "'possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, where such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances.'" <u>State v. Workman</u>, 90 Wn.2d 443, 451-52 n.2, 584 P.2d 382 (1978) (quoting Model Penal Code § 5.01(2) (Proposed Official Draft, 1962)).

To convict Guzman Rodriguez of assault in the first degree, the State had to prove that Guzman Rodriguez, with intent to inflict great bodily harm, assaulted Mejia Albino "with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death." RCW 9A.36.011(1)(a).

As mentioned, we do not presume "that the trier of fact relied on only the facts tending to prove both crimes." Borrero, 161 Wn.2d at 538. Instead, unless the facts that provide the basis for the separate conviction are also *necessary* to prove the attempt crime, double jeopardy principles are not offended. Borrero, 161 Wn.2d at 538-39.

As demonstrated by the evidence adduced at trial, the instructions given to the jury, and the State's closing argument, the facts required to prove Guzman Rodriguez's assault in the first degree conviction were not necessary to prove his attempted murder in the second degree conviction. As mentioned, it was adduced at trial that Guzman Rodriguez, with a scarf in his hand, had approached Mejia Albino while she was sleeping, expressed his intent to kill her once she had awakened, and then wrapped the scarf around her neck. These facts would be sufficient to prove the requisite act constituting the substantial step for attempted murder in the second degree. See, e.g., State v. Davis, 174 Wn. App. 623, 632-34, 300 P.3d 465 (2013) (proof of retrieving the murder weapon and moving toward victim was sufficient to establish an act constituting a substantial step toward causing the death of another).

By contrast, this same conduct is not *necessary* to prove the assault in the first degree conviction and, moreover, the assault conviction is supported by

- 11 -

distinct facts adduced at trial. Indeed, the State had proffered evidence that Guzman Rodriguez had intentionally tightened the scarf around Mejia Albino's neck and, shortly thereafter, wrapped his hands around her neck to choke her. Proof of either of these physically harmful acts would suffice to establish an assault likely to inflict great bodily injury or death to Mejia Albino.

In this way, the evidence presented at trial providing the basis for Guzman Rodriguez's assault in the first degree conviction was not necessary to prove the attempted murder crime. This suggests that the jury relied on distinct evidence to convict Guzman Rodriguez of both crimes.[3]

The jury instructions and the jury's special verdict form further suggest that the jury convicted Guzman Rodriguez of the two crimes based on different evidence. "A jury is presumed to follow the court's instructions." State v. Foster, 135 Wn.2d 441, 472, 957 P.2d 712 (1998). The jury instructions regarding the crime of assault in the first degree defined assault as a harmful or offensive touching and indicated that it must be proved that the assault "was committed with a deadly weapon or by a force or means likely to produce great bodily harm or death." In addition, the jury returned a special verdict form which found that Guzman Rodriguez had committed assault "by a force or means likely to produce great bodily harm or death." In this way, the jury determined that Guzman

---

[3] Guzman Rodriguez relies upon Orange, 152 Wn.2d 795, and State v. Valentine, 108 Wn. App. 24, 29 P.3d 42 (2001), for the proposition that the crimes for which he was convicted are the same offense for double jeopardy purposes. His reliance is unavailing. In Orange and Valentine, unlike here, the proof supporting the assault in the first degree conviction and the attempted murder conviction was the same.

Rodriguez had engaged in a harmful or offensive touching by a force or means likely to produce great bodily harm or death.

By comparison, to convict Guzman Rodriguez of attempted murder in the second degree, the jury was instructed to determine whether it was proved that "on or about the 4th day of June, 2015, the defendant did *an act* that was a substantial step toward the commission of murder in the second degree." (Emphasis added.) This was not an instruction to convict upon finding that Guzman Rodriguez had committed harmful or offensive touching by a force or means likely to produce great bodily harm or death. Rather, it directed the jury to convict if it found that Guzman Rodriguez committed an act that was a substantial step toward the commission of murder in the second degree. Taken together, the jury instructions further suggest that the jury convicted Guzman Rodriguez based on distinct evidence.

In addition, the State made clear in closing argument that it had introduced evidence of Guzman Rodriguez's conduct that took place *before* he engaged in the assaultive conduct that could satisfy the substantial step element of the attempt crime:

> So what did he do that was an actual substantial step, conduct towards committing the crime of Murder in the First Degree?[4] And here there are several substantial steps that he took.
> The defendant left the living room, where he was, and entered the bedroom with a scarf. The defendant crawled up into that bed with Leonila, where she was sleeping, her little girl beside her, and woke her up.

---

[4] The State had charged Guzman Rodriguez with attempted murder in the first degree. At trial, after the testimony had concluded, the court instructed the jury on both attempted murder in the first degree and attempted murder in the second degree.

The defendant wrapped that scarf around his hands and then wrapped it around her neck and squeezed. He struggled with her. She fought with him. He kept that pressure on. She got away from him, and he grabbed her again and again squeezed his hands - - her neck with his hands. All of those are substantial steps toward committing the crime of Murder in the First Degree.

With regard to the assault in the first degree charge, the State argued in closing that Guzman Rodriguez committed assaultive conduct as evidenced "[b]y the injuries, by the defensive wounds that Leonila exhibits on her body, specifically those wounds that she inflicted on herself when she's desperately trying to get that scarf off her neck." In its rebuttal to defense counsel's argument in closing that a lesser assault crime was committed, the State emphasized that, "[w]hat happened here was so much more serious. What happened here was the placing of a ligature on somebody's neck for a prolonged period of time, throughout a struggle, and then putting hands on the person's neck for a prolonged period of time."

In this way, the State's closing argument highlighted that the jury could convict Guzman Rodriguez of the two charged crimes and, in so doing, rely upon different evidence. Davis, 174 Wn. App. at 633. As to the attempt charge, the State indicated that it had introduced evidence of, not only assaultive acts by Guzman Rodriguez, but also of his criminal conduct occurring *prior* to the assaultive acts. The State suggested that, as to each of Guzman Rodriguez's acts that it had mentioned, the jury could rely upon *any* of them—including the nonassaultive acts—to determine that Guzman Rodriguez took a substantial step toward committing murder. By comparison, the State's closing argument for the assault charge highlighted only the evidence of Guzman Rodriguez's assaultive

conduct (strangulation by scarf and by hands). Thus, the State's closing argument informed the jury that it could convict Guzman Rodriguez of each charged crime using different evidence.[5] This was consistent with Borrero. 161 Wn.2d at 538-39.

C

The evidence adduced at trial, the jury instructions, and the State's closing argument demonstrate that the jury convicted Guzman Rodriguez of attempted murder in the second degree and assault in the first degree using different evidence. Thus, the two crimes were not the same offense in fact for double jeopardy purposes. Accordingly, the trial court did not violate the double jeopardy clauses of the state and federal constitutions by entering judgment on the jury's verdicts convicting Guzman Rodriguez of assault in the first degree and attempted murder in the second degree.[6]

III

Guzman Rodriguez requests that no costs associated with his appeal be assessed against him, as he was found indigent by the trial court.

---

[5] The legislature did not intend that the merger doctrine apply to these circumstances.
[T]he merger doctrine is a rule of statutory construction which only applies where the Legislature has clearly indicated that in order to prove a particular degree of crime (e.g., first degree rape) the State must prove not only that a defendant committed that crime (e.g., rape) but that the crime was accompanied by an act which is defined as a crime elsewhere in the criminal statutes (e.g., assault or kidnapping).
State v. Vladovic, 99 Wn.2d 413, 420-21, 662 P.2d 853 (1983). Here, the crime of attempted murder is not elevated to a higher degree by proof that Guzman Rodriguez committed assault in the first degree. Thus, the merger doctrine does not apply.

[6] Guzman Rodriguez relies upon the State's concession at sentencing that the acts underlying each crime for which he was convicted were the "same criminal conduct" for sentencing purposes. Guzman Rodriguez's reliance is unavailing. This concession at sentencing does not bear on the question of whether—for a double jeopardy claim based upon multiple convictions—the trial court violated Guzman Rodriguez's double jeopardy right by entering judgment on the jury's verdicts.

Should the State seek an award of costs, the matter will be resolved pursuant to RAP 14.2.

Affirmed.

We concur: